# Merrick *versus* Germania Fire Insurance Company.

# Same *versus* Hanover Fire Insurance Company.

# Same *versus* Fulton Fire Insurance Company.

# Same *versus* Lorillard Fire Insurance Company.

1. Four insurance companies insured machinery, &c., in buildings in a described enclosure with the following condition annexed to their policies: "If at the happening of any fire the assured shall have insurance under a floating policy or policies, not specific, but covering goods generally in various places, not designated, and yet within limits which include the premises or property herein insured, such policy, as between the assured and this company, shall be considered as covering any excess of sound value of the subject insured beyond the amount covered by the specific insurances thereon; and to determine the amount for which this company is liable in case of loss, such floating policy shall be considered an insurance on the property to the extent of such excess." Other insurance companies insured on *specific* property in the same enclosure. In a loss by fire, *held*, that the liability of the four

[Merrick *v.* Germania Fire Insurance Co.]

insurance companies was not confined to the *excess* of loss above that covered by the specific insurances.

2. The four companies were liable to contribute rateably on the property insured in the specific policies which was covered by their general policies. Per THOMPSON, J.

3. Where the underwriters have left their design doubtful by using obscure language, the construction will be most unfavorable to them.

February 11th 1867.  Before WOODWARD, C. J., THOMPSON, STRONG and READ, JJ.  AGNEW, J., at Nisi Prius.

Certificate from Nisi Prius.

These were several actions of assumpsit brought to January Term 1861 in the Supreme Court, by J. Vaughan Merrick and others, trading as Merrick & Sons, against the Germania Fire Insurance Company, the Hanover Fire Insurance Company, the Fulton Fire Insurance Company and the Lorillard Fire Insurance Company, all of the city of New York.

The cases were tried at Nisi Prius before THOMPSON, J., and were for loss by fire of property of the plaintiffs insured by the defendants.  The policy of each company for the premium of $100 insured the plaintiffs for one year from the 25th of March 1864 " to the amount of $5000 on stock of tools, steam-engines and patterns and works in a finished and unfinished condition, their own or held in trust, contained in buildings on the lot of ground in the city of Philadelphia, bounded by Fourth, Fifth and Federal streets, and Washington avenue.  The same being the property of said Merrick & Sons, and known as the ' Southwark Foundry.' "

The seventh condition annexed to the policy is : " If, at the happening of any fire, the assured shall have insurance under a floating policy or policies, not specific, but covering goods generally in various places not designated, and yet within limits which include the premises or property herein insured, such policy, as between the assured and this company, shall be considered as covering any excess of sound value of the subject insured beyond the amount covered by the specific insurances thereon ; and to determine the amount for which this company is liable in case of loss, such floating policy shall be considered an insurance on the property to the extent of such excess."

In addition to these four insurances, there were insurances in other companies on the same subjects to the aggregate amount of $75,000.

There was also an insurance of $10,000 by the Liverpool and London Insurance Company on machinery, &c., of plaintiffs in " the erecting shop," on the lot of the Southwark Foundry, and further insurances in the aggregate of $50,000 " on machinery made, and being made, intended for, and to be placed in, the steamer Chattanooga, in the various buildings of the assured, but chiefly in the building known as the erecting-shop, all at the Southwark Foundry, bounded by Washington and Federal and

Fourth and Fifth streets, Philadelphia," were made in six other companies. All the policies were continued until May 17th 1865, when a fire occurred, destroying much of the property insured. The whole loss was adjusted at $50,279.32. It was divided by the representatives of the several companies as follows:—

| | |
|---|---:|
| Machinery made and being made, for Chattanooga, outside erecting-shop . . . . . | $1,172.87 |
| Machinery made and being made, for Chattanooga, contained in erecting-shop . . . . | 10,430.40 |
| Machinery made and being made, not intended for Chattanooga, in erecting-shop . . . . | 10,712.00 |
| Machinery made and being made, not intended for Chattanooga, contained in other shops than the erecting-shop . . . . . . . | 1,924.16 |
| Stock of tools in machine-shop, and erecting-shop, and other buildings, and patterns . . . | 26,039.80 |

Atwood Smith, a witness for plaintiffs, under objection and exception, testified his opinion that the adjustment was correctly made; that the defendants' policies were general policies; also that a blank form of policy of the Liverpool and London Insurance Company shown him, was a floating policy. The plaintiffs also gave in evidence, under objection and exception, the blank form testified to.

There was evidence on both sides as to what was a floating policy and the principles upon which the loss should be distributed amongst the several companies.

The question in controversy was the amount to be paid by the defendants, they alleging that they were bound only for $1911.73 each, which sum they paid to the plaintiffs, and it was received by them without prejudice. The plaintiffs claimed $3029.37. The suits were to recover the difference.

Defendants asked the court to charge:—

2. According to the terms and conditions of defendants' policies, the defendants were not liable to contribute to the plaintiffs for any part of the loss to the subject insured by the special policies, except it was for their respective proportions of the loss in excess of the amount of said specific insurances.

3. The loss on the machinery made and being made, &c., for the "Steamer Chattanooga," being specifically covered by the policies of the six companies, the defendants were not liable to contribute to any part of the loss thereon.

4. The machinery manufactured, unmanufactured and in process of manufacture, &c., in the "erecting-shop" being specifically insured in the Liverpool and London company in the sum of $10,000, the defendants were liable to contribute to the

plaintiffs only their proportion of the loss thereon in excess of that sum.

5. The defendants were also liable to contribute their proportion of the balance of the loss on the stock of tools, steam-engines, patterns and work in a finished and unfinished condition, plaintiffs own or held in trust in said foundry, which proportion was that which their respective insurances bore to the whole of insurances thereon by all of the companies insuring the same, and if the defendants have paid their respective proportions to the plaintiffs, the plaintiffs cannot recover.

6. The words employed in the seventh condition of defendants' policies in referring to floating policies embrace defendants' policies as well as all other floating policies by other companies covering the same subject, there being nothing in the condition excluding the policies of the defendants.

The court charged :—

" The property insured was destroyed by fire on the 17th of May 1865. These facts, together with the execution of policies, the preliminary proofs and appraisement of loss, are admitted, and about these facts no dispute exists. The question of the case is the principle of adjustment to be adopted between these defendants, who are general insurers against loss by fire of all the property described and embraced within the limits of the Southwark Foundry; and the special or specific policies insuring portions of the same property within parts of the buildings, and on portions of property designed for special use, such as the erecting-shop, machinery and materials for the United States steamer Chattanooga, in said buildings, and within the area of foundry property. The defendant companies claim to have each paid its due proportion of the loss, based upon an apportionment which requires the specific policies to pay the full amount of loss on the property covered by them, and the excess not so covered by the amount of such insurances only. Under this system of adjustment, each company paid the plaintiffs $1911.73 in full, as they allege, of the sum of the whole loss which they claim they are liable for. These amounts were specially receipted by plaintiffs, with a reservation of a right to press their claim against the companies respectively for a larger amount, based upon the system of adjustment adopted by them, which you have seen is materially variant from that of the defendants. By this system the plaintiffs would be entitled to $3029.37 from each of the defendants, less the amount of an appraisement of property, which we do not consider to have been covered by their policies, to wit, gas-pipes and fixtures and the like.

" The whole case, in my judgment, turns upon the question of which of the systems of adjustment is correct.

" We have had the opinions of experienced insurance agents

and underwriters on this question. Two of these gentlemen seem to have pretty decidedly embraced the theories of their respective companies. One of them being of opinion that the defendants' system is right, referring to some practice in the city of New York on that basis, but none in Pennsylvania.

"The other being equally settled in opinion that the adjustment insisted on by the plaintiffs is the true rule under the policies in question in their relation to the specific policies covering portions of the same property covered by the general policies, and thinks that to be the practice in the London insurance companies. A third, an experienced underwriter of this city, agrees in opinion with the defendants' theory, but has never known a case of adjustment on policies like those in this case—general and specific.

"We are not materially benefited by these opinions, and we must decide the question for ourselves as best we may, having had the benefit of most full and able arguments by the counsel on the opposite sides of the case.

"The question then is, are the general policies, covering the whole property within the area of the 'Southwark Foundry,' liable to contribute rateably to the loss sustained by the specific policies on property in parts of said area, or specific property within it. If they had all been general policies, they would have been liable to contribute rateably if all solvent. Why should there be a difference when a part is covered by specific policies, and also covered by the general policies ? It is a case of double insurance of the part so covered, and a more favorable risk than a general policy on the whole. This is demonstrable by the rate of premium. The general policies get 2 per cent., and the special, 1½. The latter should get the higher premium if they are not entitled to contribution from the former. I instruct you that if there be nothing in the conditions in these policies by which the rule is changed, that the defendants are liable to contribute rateably in paying the loss on the property specifically insured and covered by both classes of policies.

"Let us see how this is, by looking at the policies themselves. In the general policies this provision is to be found : 'In case of loss, the insured shall not recover on this policy any greater proportion of the loss or damage sustained to the subject insured than the amount hereby insured shall bear to the whole amount insured in the said property.'

"If this be not controlled by some other condition or stipulation, it furnishes a plain and just rule. It has been said the object of this clause was to exclude liability on account of the insolvency of other companies. This may be one and perhaps the main object, but it shows also that this is the admitted extent of liability by the insurers themselves. It is their language, and

[Merrick *v.* Germania Fire Insurance Co.]

the plaintiffs have a right to the full benefit of it in their favor, as well as to bear its burdens when against them.

" It is said, however, that this is restricted by the seventh condition of insurances attached to the policy. · I admit that the conditions attached to a policy of insurance are to be regarded as the terms on which the contract is made, and are binding on the parties, if clear enough to be understood and applied in the judicial tribunals. The 7th clause is as follows :—

" ' If at the happening of any fire, the assured shall have insurance under a floating policy or policies, not specific, but covering goods generally in various places not designated, and yet within limits which include the property herein insured, such policy, as between the assured and this company, shall be considered as covering any excess of sound value of the subject insured beyond the amount covered by the specific insurances thereon ; and to determine the amount for which this company is liable in case of loss, such floating policy shall be considered an insurance on the property to the extent of such excess.'

" It is my duty to construe this clause, and you will be bound by my opinion of it, whether it be a confident one or not, which I am free to say it is not. That is no concern of yours. I must expound the law, and you to find the facts and apply the law to them. If I am wrong there is a tribunal to correct me, and to that tribunal I hope this case may go, to determine whether what I am going to decide is right or wrong. I regard it as an important question, and one undecided in this state hitherto.

" Whatever may have been intended by this clause, I am not able to give it the construction contended for, to wit, that it limits contribution by the general policies to the excess not covered by the specific policies. In other words, that it is a condition that they are not to be called on for anything until the specific policies are exhausted, and then are to contribute only to the excess not covered by them. Such a condition could be expressed in a few lines so that it might be comprehended by anybody. It cannot, as it is, be comprehended to mean what is claimed by anybody. Is it the insurers, describing their own policy, who speak ? This cannot be inferred from the clause. It speaks in the third person, of floating policies, without defining their own to be such. I might safely challenge the ingenuity of the most ingenious if this clause be held to assert that their policies are floating policies, and that it was such that are spoken of, to surpass in ambiguity this clause, and find any meaning. I will not enlarge, but instruct you that the clause cannot be construed, as the defendants contend, to wit, to exonerate them from contributing rateably to the loss on the property insured in the specific policies, which property was also covered by the general policies. This being the law for your government, you have but little else to do than

[Merrick v. Germania Fire Insurance Co.]

to find for the plaintiff according to their mode of adjustment, less the over-appraisement already noticed and referred to you.

" These views I consider substantially answer the several points by the defendants, but lest it might be alleged that they were overlooked, I will read and answer them consecutively :—

" 1. To the 1st point I assent.

" 2. To the 2d point I dissent and refuse so to charge. For reasons, see general charge.

" 3. To this point I also dissent. See general charge.

" 4. To this point I also dissent, and it is refused. Also see general charge.

" 5. To this point I answer: If it be meant to assert that all the general policies must contribute rateably only to the extent of the losses on property not included in the specific policies, and then to the excess only of the loss above the amount insured in the specific policies, I dissent. As already said, they are bound to contribute rateably with the specific policies on the property insured by them, and embraced in their policies also. As to the last clause of the point, there is no evidence to sustain it, under our view of the law.

" 6. To this point I dissent."

The verdicts were for the plaintiffs, each for $1110.37.

The defendants having removed the case into the court in banc, assigned for error that the judge erred :—

1. In charging the jury that they had " but little else to do than to find for the plaintiffs according to their mode of adjustment."

2. In allowing Atwood Smith to testify his opinion of the character of the policies of the defendants, and of the blank form of the Liverpool, London and Globe policy, and in allowing the said form to be put in evidence, and to testify that the adjustment of plaintiffs was correct.

3. In his answer to the 2d, 3d, 4th and 5th points of the defendants respectively.

4. In refusing to affirm the 6th point of the defendants.

*A. Briggs*, for the Insurance Companies, plaintiffs in error, cited Addison on Contracts 844 ; Sloat v. Royal Ins. Co., 13 Wright 14 ; Baltimore v. Loney, 20 McR. 20 ; Howard Ins. Co. v. Scribner, 5 Hill 298 ; Stover v. Elliott, 45 Maine 875.

*T. Elcock* and *G. W. Biddle*, for Merrick & Sons, defendants in error, cited Sloat v. Royal Ins. Co., 13 Wright 14 ; Philada. F. and L. Ins. Co. v. Mills, 5 Id. 241.

The opinion of the court was delivered, May 13th 1867, by
STRONG, J.—There is no error in these records unless it is found

[Merrick *v.* Germania Fire Insurance Co.]

in the construction given to the seventh condition attached to the policy. That condition is in these words: "If, at the happening of any fire, the assured shall have insurance under a floating policy or policies, not specific, but covering goods generally in various places, not designated, and yet within limits which include the property herein insured, such policy, as between the assured and this company, shall be considered as covering any excess of sound value of the subject insured beyond the amount covered by the specific insurances thereon; and to determine the amount for which this company is liable in case of loss, such floating policy shall be considered an insurance on the property to the extent of such excess."

Each of the companies sued in these cases insured to the plaintiffs on stock, tools, steam-engines, &c., contained in buildings on a lot of ground (describing it) known as the Southwark Foundry. Another company had previously taken a risk on machinery manufactured, unmanufactured and materials for the same, in one of the buildings on the lot known as the erecting-shop. The plaintiffs also obtained other insurance on the subject of insurance in the defendants' policies, and also obtained policies from still other companies on the machinery made, and being made and intended for the steamer Chattanooga, contained in the various buildings, but chiefly in the building known as the erecting-shop.

A loss having occurred, the defendants contend that in adjusting it between the several insurers, the specific policies, namely, those that cover specially part of the property insured, must be first exhausted, and that their policies not being insurances of stock, &c., in any one building, but in all the buildings upon the lot known as the Southwark Foundry, cover only the excess of sound value remaining after deducting from the entire loss the amount of the specific policies. If this is so, it is because of the seventh condition of their contract above quoted. But that condition, as we understand it, contains no such restriction of the generality of their engagement. It certainly does not in express terms. The condition is exceedingly obscure, and it is difficult to determine, satisfactorily, what was intended by it. One would think it easy enough to frame a clause restricting the general liability of a contract of insurance to a limited liability for so much only as might not be covered by a specific insurance of part of the subject. If it was designed that in case any one of the buildings or goods in any one of the buildings of the Southwark Foundry should be insured by other underwriters whose policy might not cover the whole subject insured by these defendants, then only so much should be insured by the defendants as to cover the loss beyond the sum thus insured by others, it should have been clearly expressed. And if the defendants have left the existence of such a design doubtful by using obscure language, they

[Merrick *v.* Germania Fire Insurance Co.]

ought not to complain if they be held to that construction of their language which is most unfavorable to them. In regard to this condition many questions may be asked which it is impossible to answer with certainty. What is a floating policy? Is it defined in the condition? If so, it is a policy larger than either of those which these defendants issued, for the limits within which the goods insured by it do *include* the property insured by the defendants. Or is it a policy on goods generally, without any designation of the place where they may be? If so, the policies of the defendants are not floating policies, for they are designatory of place. Other questions might be asked, but we are not called upon to determine what the condition does mean. It is enough if it does not exempt the defendants from a liability which would exist without it. It seems quite evident that when the defendants spoke of floating policies, they referred to some other policies than their own. They are spoken of as distinct, and it is *such* floating policies of other underwriters that are to be considered as insurance upon the property to the extent of the sound value of the subject insured—beyond the amount covered by the specific insurances thereon. We do not feel warranted, therefore, in holding that the seventh condition of the defendants' policies confine *their* liability to the excess of loss above that covered by what are called specific insurances. The court then was not in fault in the instruction given to the jury.

The 2d assignment of error was not much pressed at the argument, and we think it not sustained.

Judgments affirmed.

WOODWARD, C. J., dissented.