# Frick *v.* United Firemen's Insurance Company, Appellant.

218    409
p218    420

218    409
40SC⁴62ṓ

*Insurance—Fire Insurance—Inventory—Statement of loss.*

Where a policy of fire insurance provides that if a fire occurs, the insured shall give the company immediate notice in writing, protect the property, " make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon, and, within sixty days after the fire . . . . render a statement to the company, signed and sworn to by said insured, stating . . . . the cash value of each item thereof, and the amount of loss thereon," the insured is not required to furnish the inventory to the insurance company, but if he furnishes a proper statement of loss, signed and sworn to, he will have sufficiently complied with the provision of the policy.

In such a case the insured delivered within the proper time a statement of loss signed and sworn to. In the proof of loss, it was stated

that "the statement of loss" shows "the cash value of the property insured by you, and for which claim for loss is hereby made . . . . as is shown in statement of loss; hereto attached." The statement of loss showed the items destroyed, and the price of each item. The word "price" instead of "cash value" was put at the head of the column in which the value of each item was given. In a letter the insured advised the company that: "Our proofs of loss are filed upon the basis of actual cash market value at time of fire." *Held,* that the statement of loss was sufficient.

*Insurance—Fire insurance—Whisky—Measure of damages.*

A policy insuring whisky against loss by fire provided as follows: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quantity." It appeared that the whisky insured was all made by the same company, but was of different ages. *Held,* (1) that the cash value of the whisky could not be determined by taking together, the cost of material, the expense of manufacturing the whisky, the charges of carrying it in bond, insurance, and interest on the amount invested; (2) that the "cash value" within the meaning of the policy and as applicable to whisky, was the market value in the wholesale liquor market at the time the whisky was destroyed.

A contract of insurance must have a reasonable interpretation, such as was probably in the contemplation of the parties when it was made, and when the words of a policy are, without violence, susceptible of two interpretations, that which will sustain a claim to the indemnity it was the object of the assured to obtain, should be preferred.

Standard Sewing Machine Co. v. Royal Ins. Co., 201 Pa. 645, distinguished.

Argued May 13, 1907. Appeal, No. 21, Jan. T., 1907, by defendant, from judgment of C. P. Fayette Co., June T., 1906, No. 6, on verdict for plaintiffs in case of Henry C. Frick, Andrew W. Mellon and Richard B. Mellon, copartners, trading as A. Overholt & Company, v. The United Firemen's Insurance Company. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before UMBEL, J.

The facts relating to the proof of loss are stated in the opinion of the Supreme Court.

At the trial the plaintiffs made the following offer :

Counsel for plaintiffs offer to prove by the witness on the stand—to be followed by other testimony and competent proof—what was the actual cash value of the whisky destroyed at the time of the fire.   This to be followed by proof that it was impossible for the plaintiffs to replace the same by purchase on the market with material of like kind and quality for less than the amount which the witnesses will testify was the actual cash value of the property destroyed.

Counsel for defendants object to the offer as incompetent and irrelevant for the reasons following : That the policies provide that the respective companies shall not be liable beyond the actual cash value thereof at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality.

Objection overruled, with exception for the defendants. [9]

Mr. Smith : I desire counsel to make an offer of what they propose to prove by the witness on the stand.

Counsel for the defendant offer to prove by this witness, 1. That he is a competent bookkeeper and has had experience in bookkeeping relating to the liquor or whisky business. 2. That he has made an examination of plaintiffs' books with a view of learning what it would cost the plaintiffs in November, 1905, to replace the whisky destroyed with whisky of like kind and quality.   3. That to that end he learned from the books of the plaintiff company the minimum cost of the different lots of whisky destroyed.   4. That the maximum cost of the whisky destroyed, with all the charges and expenses incident thereto, up to the time of the fire on November 19, 1905, was much less per gallon than the prices claimed by the plaintiff.   5. This for the purpose of showing what it would have cost the plaintiffs to replace the whisky destroyed on November 19, 1905.

Objected to by counsel for plaintiffs as generally incompetent and irrelevant.

The Court : Being of the opinion that the principle as found in the case of Sewing Machine Company v. Insurance Com-

pany, 201 Pa. 645, does not apply under the facts as here established and the proofs submitted, and being further of the opinion that the principle declared in Mitchell v. Ins. Co., 92 Mich. 594 (52 N. W. Repr. 1017), and the cases reported or cited as being reported in Hartford Fire Ins. Co. v. Cannon, 19 Texas Civ. App. 305 (46 S. W. Repr. 851), do apply and coincide with our view regarding the matter, we will sustain the objection, with an exception for the defendants. [10]

Counsel for defendants offer to prove by the witness on the stand, and other witnesses, that during an investigation attempted by the defendants as to what it would cost the insured to replace the whisky destroyed by the fire on November 19, 1905, the witness as a representative of defendant companies visited the office of the plaintiff company and there met the general manager of the plaintiff company's business, who admitted that the sum of the loss claimed by him for the plaintiffs, being the sum now claimed in these suits, included at least $30,000 of profits, this for the purpose of showing that the sum now claimed by plaintiffs is greatly in excess of what it would have cost plaintiffs to replace the whisky lost on November 19, 1905.

Objected to by counsel for plaintiffs as generally incompetent and irrelevant.

The Court: We are inclined to think our last ruling covers that question, and we will sustain the objection with an exception for the defendants. [11]

The court charged in part as follows:

[The standard then ordinarily is actual cash value which shall not exceed what it would then cost the insured to repair or replace the property destroyed with material of like kind and quality, and the loss shall be ascertained accordingly. However, under the facts in these cases, considering that the whisky destroyed was of different inspection and of various ages and likewise of different qualities and values affected materially by its age, the principles controlling in the construction of buildings or of machinery are not applicable in these cases.] [4]

[As we understand the law, and as we instruct you, the actual cash value of the whisky destroyed at the time of the

fire is what you are to determine in these cases. The other part of the language quoted regarding the then cost to the insured of manufacturing a like quantity of whisky to the amount destroyed does not apply here. The word "then" in this contention in these policies is an important and a significant term and must be given weight in determining the true intent and meaning of the policies.] [5]

[The defendants insist that the plaintiffs being manufacturers of the property destroyed, the measure of the damages should be the actual cost to them at the date of the fire of manufacturing a quantity of whisky equal to the amount destroyed, including carrying charges, interest, etc., for the various lengths of time corresponding to the ages of the different inspections of whisky destroyed, which construction in each drops the word "then" and construes the policy as intending to give the defendants the benefit of the time it would take the insured to reproduce and age that large quantity of whisky.] [6]

[In our opinion under the facts in these cases the policy cannot be so construed without doing violence to the language employed. Clearly it means what it says, "what it would then cost the insured to repair or replace it," and that would be the actual cash value and not what it would cost the plaintiffs to purchase and collect the various kinds of materials necessary to make so large an amount of whisky and then manufacture it at their own distillery and await the delay necessarily incident for it to acquire the respective ages of the whisky destroyed; which, in our opinion, practically and legally makes it impossible to apply that part of the provisions of the policy quoted regarding "what it would then cost the insured to repair or replace the property destroyed with material of like kind and quality," to the facts in these cases from the view point of the cost of manufacturing or reproducing the property destroyed.] [7]

[As we have already indicated, we do not think that the plaintiffs would be required or should be required after the destruction of property such as this to purchase and collect together the necessary materials and manufacture the quantity of whisky destroyed and then be obliged to wait the time necessarily required incident to the maturing of the goods manufactured to make them "of like kind and quality," such

as were destroyed by the fire, and that, we think, is an important consideration as to why you should take the actual cash value as the measure of damages in these cases.] [8]

Defendant presented these points:

1. The plaintiffs having failed prior to the bringing of these suits to furnish to the defendants respectively a statement signed and sworn to by the insured, stating, inter alia, the cash value of each item of property claimed to have been destroyed by the fire in question, these actions are premature and the plaintiffs cannot recover. *Answer:* Refused. [1]

2. The policy provides that if a fire occur the insured shall ". . . . make a complete inventory of the property, stating the quantity and cost of each article and the amount claimed thereon." The uncontradicted evidence shows that such an inventory was not made or exhibited by the plaintiffs to the defendants, and upon their attention being called thereto and a request made to furnish a statement of the cost, the plaintiffs did not render to the defendants the required statement, and these actions are, therefore, premature and the verdict should be for the defendant in each case. *Answer:* Refused. [2]

3. Under the law and all the evidence the verdict should be for the defendant in each case. *Answer:* Refused. [3]

Verdict and judgment for plaintiffs for $2,606.67. Defendants appealed.

*Errors assigned* amongst others were (1–8) above instructions, quoting them; (9–11) rulings on evidence, quoting the bill of exceptions.

*W. K. Jennings* and *S. S. Mehard,* with them *D. C. Jennings,* for appellants.—The plaintiffs having been notified that the proofs were incomplete and unsatisfactory and having declined to amend the inventory or proofs, the action was premature: Langan v. Ins. Co., 162 Pa. 357.

The court erred as to the measure of damages: Standard Sewing Machine Co. v. Royal Ins. Co., 201 Pa. 645; Warmcastle v. Scottish Union & Nat. Ins. Co., 201 Pa. 302; Kountz v. Kirpatrick, 72 Pa. 376; Theiss v. Weiss, 166 Pa. 9.

*William Watson Smith,* of *Gordon & Smith,* with him *John*

*S. Christy,* for appellees.—Plaintiffs are entitled to recover the actual cash value of the whisky destroyed : Mitchell v. St. Paul German Fire Ins. Co., 92 Mich. 594 (52 N. W. Repr. 1017); Hartford Fire Ins. Co. v. Cannon, 19 Texas Civil App. 305 (46 S. W. Repr. 851).

The proofs of loss plainly show the cash value of each item of the property destroyed.

Plaintiffs were not obliged under the term of the policies to furnish to defendants an inventory stating the cost of the goods destroyed.

OPINION BY MR. JUSTICE MESTREZAT, May 27, 1907 :

As stated by the learned counsel for the appellant, the assignments of error properly before us raise but two questions : (1) Does the policy of insurance require the plaintiffs to furnish the defendant company an inventory of the property destroyed, stating the quantity and cost of each article and the amount claimed thereon : and (2) did the court err as to the measure of damages ?

1. The clause in the policy which the defendant company claims requires the plaintiffs to furnish such inventory is the following : " If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating . . . . the cash value of each item thereof and the amount of loss thereon," etc. It will be observed that this clause imposes upon the plaintiffs the duty, inter alia, of making an inventory, but does not require the insured to furnish it to the insurance company. It simply says the insured shall " make a complete inventory." After he has made the inventory, the policy requires, as will be noticed, that he, " within sixty days after the fire, unless such time is extended, in writing by this company, shall render a statement to this company, signed and sworn to, by said insured, stating . . . .

the cash value of each item thereof and the amount of loss thereon," etc. The plaintiffs complied with this provision of the policy in their proof of loss which was "signed and sworn to by the insured," and delivered to the defendant company as required by the policy. That shows "the cash value of the property insured by you and for which claim for loss is hereby made . . . . as is shown in 'Statement of Loss' hereto attached." The statement attached to the proof of loss shows the date of manufacturing the whisky, the number of gallons destroyed, the price per gallon, and the aggregate loss. It is true, that in this statement the word "price" instead of "cash value" is put at the head of the column in which the value per gallon of the whisky is given, but the word is manifestly used as meaning the same as "cash value," and the defendant company must have understood its meaning to be such. This is apparent, not only from the fact that in the proof of loss the value given in the "Statement of Loss" is declared to be the "cash value," but also from the two letters written by the plaintiffs to the defendant company in January, 1906, in which the defendant is advised that "our proofs of loss are filed upon the basis of actual cash market value at time of fire, as called for by the policies." The proof of loss was the statement required by the policy and it was entirely sufficient. In addition to the information contained in the statement, the plaintiffs invited the defendant company to inspect their books, which would have disclosed every fact with regard to the whisky which was in the possession of the plaintiffs. If the defendant did not avail itself of the invitation and obtain the additional information in the possession of the plaintiffs, the latter are not at fault, and it is no reason for defeating the plaintiffs' claim in this action.

2. The policy contains the following provision : "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quantity." This provision of the contract furnishes the measure of damages and raises the important

question in the case. The policy is the contract between the parties, and must be given an interpretation which will carry out their intention. If the language of the policy is doubtful or obscure, it will be construed most unfavorable to the insurer : Merrick v. Germania Fire Insurance Co., 54 Pa. 277. A contract of insurance must have a reasonable interpretation, such as was probably in the contemplation of the parties when it was made ; and when the words of a policy are, without violence, susceptible of two interpretations, that which will sustain a claim to the indemnity it was the object of the assured to obtain should be preferred : Humphreys v. National Benefit Association, 139 Pa. 214.

The property covered by this policy is of a peculiar character, but the intention of both parties was to protect the insured against its loss by fire, and the policy must be construed so as to effect that purpose. It is not like a machine, a house, or property of that character. There is no difficulty whatever in ascertaining the cost of repairing or replacing such property as of the date it is injured or destroyed. Proof is readily accessible which will enable the insured to establish " what it would then cost to repair or replace the same with material of like kind and quantity." A moment's reflection will show that this is not true of whisky which has been destroyed. From the uncontradicted evidence it appears, and, therefore, it must be taken as a fact, that the age of whisky materially affects its character and quality, and hence is an important factor in ascertaining or determining its value. It also appears in the case that this, like other brands of whisky, has a distinctive character and quality of its own, and that no brand of whisky can be substituted in the market for another brand.

Now, under the clause of the policy above quoted, how should the plaintiffs' loss be measured ? The whisky insured by the several policies issued to the plaintiffs was of different inspections. There were 6,910 barrels destroyed. The most of it was manufactured about six months prior to the fire ; some of in 1903 and 1904, and some in 1898 and 1899. The defendant company is not liable beyond the actual " cash value." What is that value ? That is fixed by the uncontradicted testimony of a number of witnesses. It ranges from fifty cents to $1.05 per gallon, according to its age. This was

the cash value of the A. Overholt & Company whisky in the wholesale liquor market on November 19, 1905, when it was destroyed. As appears in the evidence there was whisky of that brand of the different inspections on the market at that date. It must be conceded, we think, that if the cash value of the whisky at the date of the loss is the only practical standard for measuring the plaintiffs' damages, the court and jury must accept the value fixed by the plaintiffs' witnesses. It will be observed, however, that the policy provides that the cash value of the whisky " shall in no case exceed what it would then cost the insured to repair or replace the same with material of like kind and quality." The defendant company contends that the loss could not be estimated at more than it would have cost the insured to replace the whisky. In other words, the position of the defendants is, that under this provision of the contract the plaintiffs' right of recovery is limited to the cost of material, the expense of manufacturing the whisky, the charges for carrying it in bond, insurance and interest on the amount invested in the whisky. This provision of the policy is simply a limitation on the former provision, which fixes the loss at the cash value of the property. In estimating the loss the insured is entitled to the cash value of the property destroyed, provided it does not exceed what it would cost to replace it with material of like kind and quality at the date it was consumed. How shall this cost be ascertained ? It is doubtless true that the cost of manufacturing a gallon of whisky is easily ascertained. But that does not meet the requirements of this case. The plaintiffs are not restricted to the simple cost of reproducing the whisky. They are entitled to have the whisky which was destroyed replaced as of the date of the loss with the same material of like kind and quality. The whisky consumed by the fire was, as we have seen, of different inspections. It had age which gave it character and quality. It was of the A. Overholt & Company brand, dissimilar in character and quality from other brands, and for which there is no substitute. The cost of whisky of like character, quality and age is the measure of the plaintiffs' right of recovery. It is manifest that this cost cannot be ascertained by simply taking into consideration the cost of the elements suggested by the learned counsel for the defend-

ant company.   It omits from the calculation the effect which age has on that particular brand of whisky, which is a most important factor in determining its cost.   Nor can any witness, as is apparent, definitely estimate what the age of each of the several inspections in this case will add to the actual cost of the material entering into the particular brand of whisky.   It is an important element entering into its value, but the precise extent to which its value is increased cannot be fixed by testimony.   There is, therefore, but one way to ascertain the cost of replacing the whisky at the date it was destroyed, considering the brand, character, quality and age of the whisky, and that is to ascertain by competent evidence its actual cash value on the day of the fire.   By that method of computing the cost the whisky destroyed will be replaced " with material of like kind and quality " as of the date it was consumed, and that is, therefore, the measure of the plaintiffs' damages.

The rule adopted in ascertaining the cost of replacing the insured property in Standard Sewing Machine Company v. Royal Insurance Company, 201 Pa. 645, is not applicable here for the reasons above stated.   To enforce it under the circumstances of this case would deprive the plaintiffs of the protection against loss of their property by fire which the policy stipulates.   In the sewing machine case there was no difficulty in applying the rule.   Here, owing to the peculiar character of the property insured, the cost of replacing it must be determined by its value at the date of the loss.

The judgment of the court below is affirmed.