## FEDERAL LIFE INS. CO. v. McALEER.

No. 21360. Opinion Filed Dec. 20, 1932.

Rehearing Denied Jan. 7, 1933.

McKeever, Elam & Stewart, for plaintiff in error.

H. J. Sturgis, for defendant in error.

KORNEGAY, J. This proceeding in error comes from the district court of Garfield county. The petition was filed April 5, 1929, and sought recovery on an accident policy covering injuries, and disabilities, and death from causes enumerated. The case took the course of motion to make more definite, demurrer to petition, and general denial unverified of petition, trial by jury, demurrer to evidence, both sides asking for a directed verdict, plaintiff being successful below, defendant complaining here.

The brief of plaintiff in error sets out considerable of the evidence, and argues the matter under the head of six propositions. The first complaint concerns the overruling of the motion to make more definite and certain, the second concerns the overruling of the demurrer to the petition, the third to admitting evidence to be submitted on behalf of plaintiff, the fourth to the overruling of the demurrer to the evidence, the fifth complaining of the direction of the verdict, and the sixth to the overruling of the motion for new trial. Under the fourth proposition, the plaintiff in error states:

"But perhaps the hub of the whole situation is whether or not the alleged injuries occurred in the manner specified in the policy.

"Part 1 of the policy (see case-made, p. 17) which admittedly is the only provision under which the plaintiff could possibly claim, reads as follows:

" '* * * or by the wrecking or disablement of any private horse-drawn vehicle, or motor-driven car (excluding motor cycles or trucks) in which the insured is riding or driving, or by being accidentally thrown from such vehicle or car'."

The facts as disclosed by the evidence were that plaintiff in an automobile was traveling, and while on his journey found it necessary to have the car greased, and while plaintiff remained seated, the car was driven onto a grease rack for the purpose of having it greased, plaintiff expecting to remain in the car while the operation was going on. Seeing some person across the street, he started to get out of the car to see the party. About the time the plaintiff was stepping out of the car, the motion of the car caused by the rack mechanism, caused plaintiff to lose

his hold on the door jamb, which he held to while endeavoring to alight for the purpose of steadying himself, and in his endeavor to alight, he fell and broke his hip. After quoting some of the testimony, plaintiff in error's brief is as follows:

"Defendant's Exhibit No. 1. (C-M, 43).

" 'No. 8. State fully and precisely what you were doing at the time the accident occurred?

" 'A. Slipping out of auto on platform.

" 'No. 10. How did the accident happen?

" 'A. Hand hold slipped and fell on concrete pavement.

" 'No. 16. To what extent was the conveyance in or on which you were riding wrecked or disabled?

" 'A. Not wrecked at all. Accident occurred in getting out of auto. Hold slipped and fell to pavement.'

"Defendant's Exhibit No. 5 (C-M., 49).

" 'No. 18. Were you thrown from the car?

" 'A. Hold slipped.'

"Representing a letter by the claimant to the Federal Life Insurance Company is as follows (in part):

" 'The theme of your song seems to be that the car in which I got hurt was not in motion. If you can show me that even implied where your policy says or states that the vehicle must be in action, I will withdraw my claim.'

"The testimony just quoted brings out several propositions. Among other things, it indicates that the plaintiff has apparently changed his theory. First, he insists that he could recover even though the car was not in motion. Second, he was not in the car at the time of the alleged injuries. Third, he was not riding or driving the car at the time of the alleged injuries. Fourth, he was not accidentally thrown from such vehicle or car.

"It is our contention that the plaintiff must show all of these factors occurred as conditions precedent to recovery under the policy.

"When the insured drove the car upon the greasing rack for the purpose of having it overhauled, he abandoned for the moment the act of riding in or driving the car. The weight of authority, however, is to the effect that a traveler who abandons his vehicle or means of conveyance during the journey cannot be said to be either in or on the vehicle or engaged in the act of making his journey. See 14 R. C. L. section 420, p. 1241.

"The act of riding in or driving implies motion. These are words and phrases well understood and have a clear and well defined meaning when used in a contract of insurance.

"The word 'driving' is defined by Webster's New International Dictionary as follows:

" 'To impel or urge onward in a direction away from, or along before, the impelling force or agency; variously; to cause to move on; to urge onward; as with plows; (?blows) as, to drive cows to pasture; to communicate a forward motion to, as by pressure; to push forward, as to drive a nail; to give a forward impetus to; to propel; impel; to carry along or keep in motion, to go by, or pass in, a carriage whose course is wholly or partly under one's direction; to proceed by direction or urging on a vehicle or the animals that draw it.'

"And the same authority described 'ride' as follows:

" 'To be supported in motion, to be borne along; to sit on and control so as to be carried; hence, to be carried along by; to make, perform, or do, by riding; the act or fact of riding: an excursion or journey on the back of an animal or in or on any vehicle or conveyance.' "

Argument is made that the risk assumed only covered the time when the automobile was in motion, and the case of Primrose v. Casualty Co. (Pa.) 37 L. R. A. (N. S.) 618, is cited, and the case of Georgia Life Ins. Co. v. Easter (Ala.) L. R. A. 1915C, 456. Each case depends on its peculiar facts. The latter case held that a picnic wagon for white people was not a common carrier. The former case held that within the meaning of the accident policy, a double indemnity would accrue in a case of a taxicab injury, under a "public conveyance" injury provision entitling insured to double indemnity. The case itself and the annotations appear to be antagonistic in reason to the position of plaintiff in error. The court there lays down the governing principle, as follows:

"The contention of the learned counsel for the appellant is that the double indemnity clause is applicable only to the case of a person occupying a place for which he pays a fare in a railway car or conveyance operated for the common use of himself and of such promiscuous persons as may happen to take passage en route, over which conveyance he exercises no control. It is to be noted that the clause was inserted by the insurer itself in the policy of insurance which it issued to the insured, and, if it intended that the same should have the restricted meaning for

which its counsel now contend, it could have readily so worded the clause. The insurance company could have so framed it that there would now be no doubt that the appellee could not insist that it was intended to extend to her claim. It is next to be remembered that, as the words used in the clause are the language of the insurer, a salutary rule of construction requires them to be construed most favorably to the insured (Hughes v. Central Acci. Ins. Co., 222 Pa. 462, 71 Atl. 923; May, Ins. sec. 175) ; and, for the same reason, if the clause is capable of two interpretations equally reasonable, that is to be adopted which is most favorable to the insured. Bole v. New Hamp. F. Ins. Co., 159 Pa. 53, 28 Atl. 205; McKeesport Mach. Co. v. Ben Franklin Ins. Co., 173 Pa. 53, 34 Atl. 16. 'If the language of the policy is doubtful or obscure, it will be construed most unfavorably to the insurer. Merrick v. Germania F. Ins. Co., 54 Pa. 277. A contract of insurance must have a reasonable interpretation, such as was probably in the contemplation of the parties when it was made; and when the words of a policy are, without violence, susceptible of two interpretations, that which will sustain a claim to the indemnity it was the object of the assured to obtain should be preferred. Humphreys v. Nat. Ben. Asso., 139 Pa. 264, 20 Atl. 1047; Frick v. United Firemen's Ins. Co., 218 P. 409, 67 Atl. 743. As applied to the admitted facts in the present case, we regard the double indemnity clause as having but one meaning."

This court, beginning with the early case of Taylor v. Insurance Co., 25 Okla. 92, 105 P. 354, and the case of General Accident Fire & Life Insurance Corp., Ltd., v. Hymes, 77 Okla. 20, 185 P. 1085, in a practically unbroken line of decisions, has adhered to the principle that the insurance company, having prepared the contract, in case of ambiguity, should in return for its premium insure against injuries fairly embraced within the terms of the contract, and that the methods of a technical, legal analyst should not be applied to language which to a person of common understanding appeared to create an indemnity contract, when the premium was collected.

Applying these rules to the present situation, and viewing the policy in all its language, big and little type, and display type, it is clear that the premium payor had a right to believe he was insured, against the accident that actually happened, whether the car was actually in motion or not, when he was trying to alight on his feet, and did not succeed, falling and breaking a hip. It is clear that the car was a motor-driven car. It is further clear that the insured was actually thrown from the car by the force of gravity, when he lost his hold and balance in alighting whether the relative term "such" used in the policy has for an antecedent the word "car" or phrase "motor-driven car," or "motor-driven car in which the insured is riding or driving." It is evident that the insured paid for the assumption of the risk of the accident arising out of the use of the car for riding purposes, and the bare fact of the car not being actually in a forward or backward motion ought not to be controlling. If such had been the expressed intention, the policy would not have been so attractive. The instrument was labeled a "Federalized Travel Accident Policy."

An accident happens while the party is on a journey and stops at a station to grease the car then being used for travel. A definition of "driving" has been set out from Webster's New International Dictionary. However, there are several shades of meaning carried by the word "drive" and the word "ride," depending on the context. In the definition given is an illustration, "drive cows to pasture." In practical definition, we would scarcely claim that if a cow along the route should stop for a drink or a bite of grass, the drive instantly ceased, as is now contended for by the insurance company. Other definition given by the same author under "drive" as a verb, is:

"3. To go by, or pass in, a carriage whose course is wholly or partly under one's direction; to proceed by direction; to proceed by directing or urging on a vehicle or the animals that draw it; as, the coachman drove to my door. One rides when one has no control over the course of the vehicle in which one is, as a public omnibus, etc."

The contrast as between "drive" and "ride" is given by Webster's Dictionary, as follows:

"Syn.—Ride, Drive. The tendency of present usage is toward the following distinction: one drives in a private or hired carriage; one rides on horseback, in any large public conveyance (as a railroad carriage, a street car, or an omnibus), or in any conveyance not drawn by an animal (as a motor car or a balloon.)"

If one should engage passage on the train from Oklahoma City to Tulsa, it would be too critically distinctive to say that he ceased to ride when the train stopped in ordinary course. Applying the rules of construction cited above, we think

the loss was covered by the policy. Some contention is made as to notice being insufficient on account of not being full enough. It was sufficiently full that the insurance company did not ask for further particulars, but rejected the claim after investigation on the ground that the car was not in motion when the accident happened, and that the insured was not accidentally thrown from the car. It was sufficient to cause a letter to be written, after investigation, rejecting the claim on the ground, as follows:

"Our investigation shows that the automobile was not in motion and that you were not accidently thrown from it, but that you slipped and fell. I regret to state the policy does not cover this particular claim.

"For the above reasons, I regret to advise that we can be of no service to you in this instance."

Several cases are cited as to the rule concerning direction of verdicts, and overruling demurrers and motions to make more definite, but no case decisive of the case here presented has been cited by either party. Our investigation convinces us that the accident is covered by the policy, and the plaintiff in error is liable on its policy, and the court did not commit error in so holding.

The case is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, and McNEILL, JJ., concur. SWINDALL and ANDREWS, JJ., dissent.

---

ANDREWS, J. (dissenting). I do not agree with the views of my associates expressed in the opinion of the majority herein.

In the language of the Supreme Court of the United States, in American Surety Company of New York v. Greek Catholic Union, 284 U. S. 563, 76 L. Ed. 490, 52 S. Ct. 235, "* * * the facts preclude a recovery. The cause and genesis of the loss was not one of the events specified in the bond on which payment was conditioned. The defaults for which the petitioner agreed to be liable were clearly defined."

The provisions of the policy of insurance relied on by the plaintiff are as follows:

"* * * or by wrecking or disablement of any private horse-drawn vehicle, or motor-driven car (excluding motor cycles or trucks) in which the insured is riding or driving, or by being accidentally thrown from such vehicle or car. * * *"

Paraphrasing the language of the Supreme Court of the United States in the cited cases, in my opinion, there is nothing in that language which "by the farthest stretch of construction can be said to undertake the payment of a loss" due to an injury sustained by one which was caused by his deliberately stepping from a car that was elevated on a grease rack, and, in the language of that decision, the plaintiff "* * * cannot now ask that the bond be rewritten to cover an event not therein specified or contemplated."

The policy of insurance provided indemnity for loss of life, limb, sight or time by accidental means, "as herein limited and provided." That provision was not only the opening statement thereof, but it was clearly printed on the front of the policy as folded. The premium of $2 per year evidenced a limited policy.

Notwithstanding the limited policy purchased and the limited premium paid, this court, by the opinion of the majority. in my opinion, interpreted the contract to include a liability not included within the terms of the contract and not procurable for the limited premium paid. The excuse given therefor is that otherwise "* * * the policy would not have been so attractive." It seems to me that the policy should be interpreted as printed, rather than to make it "attractive."

The majority are of the opinion, as stated in their opinion, that "* * * the insured was actually thrown from the car by the force of gravity. * * *" For a long time I have heard of gravity pulling things, but heretofore I have not heard of gravity throwing things. Under the theory of the majority, a man who jumps from a tenth story window of a building is thrown from the building by the force of gravity.

This policy covers injuries caused by being "accidentally thrown" from a vehicle. If, as held in the majority opinion, the man was thrown from the car by the force of gravity, it certainly was not accidental, for the force of gravity, as I have always understood it, does not act accidentally. Conceding, if it is possible to do so, that the man was thrown from the car by the force of gravity, in my opinion, he was not accidentally thrown therefrom by that

force. In my opinion, the power of gravity should not be held to operate accidentally.

The provision of this policy is not with reference to a moving vehicle, but with reference to a vehicle in which the insured "is riding or driving." As stated in the majority opinion, the car had been driven onto a grease rack for the purpose of having it greased and it had been raised from the ground by the mechanism used for that purpose. While in an elevated position, the plaintiff saw some person with whom he wanted to talk and he started to get out of the car to see that party. As stated in the majority opinion, about the time the plaintiff was stepping out of the car, the motion of the rack mechanism caused the plaintiff to lose his hold on the door jamb and caused him to fall and break his hip. The rack mechanism was moving, but the car was securely blocked thereon and the car moved only as the rack mechanism moved.

If the provision of this policy referred to a moving vehicle, I might be constrained to believe that it referred to a car moving vertically with the grease rack on which it rested, rather than horizontally on the ground, but the provision of this policy does not refer to a moving car. That provision refers to the insured while riding or driving. The insured was not driving the car for he was sitting in the back seat when he saw the man with whom he wished to speak, and he arose from the position in the back seat, crawled over the front seat, opened the front door, and fell as he stepped from the front door of the car. He was not riding in the car for the car was blocked on a grease rack and raised from the ground. Since he was neither riding nor driving when he "was actually thrown from the car by the force of gravity," it is immaterial whether he was thrown from the car by the force of gravity, or whether he stepped from the car, as he and his only witness thereto testified.

The plaintiff testified that:

"A. It happened at the corner of Main and Washington streets at the Butts Filling Station. We drove into the Butts Filling Station to have the car greased, and was going over to the Baptist Hospital to see a party over there, and the car was driven on the grease rack and I was sitting in the car, intending to stay there and I looked out and noticed a party whom I had business with and I started to get out of the back seat. It was a two-door sedan, and the boy started to raise the car and I didn't notice it until it was about two feet high and I happened to notice it was starting to go up and took hold of the front door jamb and just as I took hold and started to step out the car moved and broke my hold and I started to jump, and I do remember I turned around to grab the brake."

On cross-examination, he testified:

"A. The car moved when I started to get out. When I got hold of the front door jamb, it is a two door sedan they call the car, and I grabbed hold of the front door jamb and the car moved up and as it did I lost my hold and started to jump; in getting out of a two-door sedan, the doors open both ways and the handles are turned around back, and I started to put my foot out on this running board there just at the same time the car began to move, and the whole thing happened so quickly; and the car moved while I was on my feet to get out."

His witness, and the only witness to the accident, testified:

"A. He was going to get out of the car and I told him to wait a minute and I went around to let it down and he stepped out and lost his balance."

In the plaintiff's preliminary proof of loss to the insurer, he stated:

"8. I was injured Oct. 21, 1928, hour 4 p. m. Here state fully and precisely what you were doing at the time accident occurred. Slipping out of auto on platform.

"9. Where were you when the accident occurred? (Describe immediate surroundings) At filling station Cor Main & Wash.

"10. How did the accident happen? Hand hold slipped and fell on concrete pavement. * * *

"16. To what extent was the conveyance in or on which you were riding wrecked or disabled? Not wrecked at all. Accident occurred in getting out of auto. Hold slipped and fell to pavement.

"17. If accident was due to collision of any kind, describe collision. None.

"18. Were you thrown from the car? —What caused you to be thrown from the car? Hold slipped."

He wrote the insurer a letter which, with heading and signature omitted, was as follows:

"Gents: I am just in receipt of a letter from your Mr. Crawford at Dallas, Texas disallowing my claim for accidental indemnity on policy No. A585994 on the

256

ground that your article No. 1 in policy provides only for being thrown from an automobile, and not for one who attempts to leave an auto & hold slipping & body falling & receiving a bad fracture.

"This looks very much to me as a technical matter only & a difference only of Tweedledee & Tweedledum.

"I am writing our Secretary of State to learn whether or not your Co. maintains a service Agt. in Okla. If you do I shall, unless I hear from you to the contrary, bring suit for collection of the three months indemnity as per policy contract.

"I fully realize that the amount is small on which to predicate a suit, but as I am a practicing lawyer myself, or at least licensed to practice, I can hold the expense down to amount involved."

Notwithstanding, the trial court directed the jury to return a verdict in favor of the plaintiff and this court affirmed the judgment rendered thereon.

I have found nothing in this record to show that the plaintiff was either riding in or driving the vehicle from which he was "thrown" "by the force of gravity" at the time he was so thrown therefrom, and I find nothing in the record to show that he was thrown from the vehicle by the force of gravity. The record shows that, while this car was standing on the grease rack elevated from the ground, the plaintiff stepped from the car, slipped and fell, and sustained the injury complained of.

By the opinion of the majority, the insurance policy was rewritten to cover an event not therein specified, contemplated, or paid for.

For the reasons stated, I dissent.

I am authorized to state that Mr. Justice SWINDALL concurs herein.

Note: See under (1) annotation in 37 L. R. A. (N. S.) 620; L. R. A. 1915C, 457; 36 A. L. R. 811; 14 R. C. L. 1241, 1242.