**IHC, INC., a corporation,
Plaintiff-Appellee,**

v.

**AFFILIATED FM INSURANCE COMPANY, a corporation, Defendant-Appellant, and Fireman's Fund Insurance Company, a corporation, Defendant.**

No. 71–1133.

United States Court of Appeals,
Tenth Circuit.

Nov. 30, 1971.

John Joseph Snider, R. Brown Wallace, Oklahoma City, Okl., for defendant-appellant, Affiliated FM Ins. Co.

W. Lawrence Eakin, Jr., Marietta, Okl., for plaintiff-appellee, IHC, Inc.

William K. Johnson, Glenn P. Schwartz, Chicago, Ill., Clarence P. Green, Oklahoma City, Okl., for defendant, Fireman's Fund Ins. Co.

Before SETH, HAMLEY*, and Mc-WILLIAMS, Circuit Judges.

HAMLEY, Circuit Judge.

This is a diversity action, arising in Oklahoma, wherein IHC, Inc. (IHC), sought a declaratory judgment against Affiliated FM Insurance Company (Affiliated), and Fireman's Fund Insurance Company (Fund). IHC's subsidiary, Carousel Products, Inc. (Carousel), had lost a shipment of wigs to hijackers, while the wigs were in transit from Carousel's Puerto Rico plant to its plant in Brooklyn, New York. IHC claimed that the loss was covered under policies issued by both insurance companies, but both defendants denied liability.

Both defendants filed motions for summary judgment. The district court granted Fund's motion. It denied Affiliated's motion and affirmatively determined that Affiliated is liable to IHC for the loss. Judgment was accordingly entered dismissing the action against Fund and awarding IHC recovery against Affiliated in the principal sum of $38,348.00 agreed as to amount.[1] Affiliated appeals. IHC did not appeal from the judgment in favor of Fund.

The facts are undisputed. On and prior to September 16, 1969, IHC and its subsidiary, Carousel, were engaged in the manufacture and sale of wigs which they imported into the United States from various points in the world. At that time, IHC was a party to two contracts of insurance, Fund's marine policy No. WB20283 and Affiliated's policy No. S-50759. Fund's policy insured IHC against loss of goods shipped by air and,

as to air shipments, the insured: "Warranted 25% invoice value declared to carrier." Affiliated's policy protected the insured as to such goods while being transported in the continental United States. This policy contained certain exclusionary provisions, including the following:

"2. PROPERTY AND INTEREST EXCLUDED:—

"This Policy does not insure:

\*   \*   \*   \*   \*   \*

"(b) Property while covered under import or export ocean marine policies;"

On September 16, 1969, Carousel tendered a shipment of 6,070 synthetic hair pieces to Transcaribbean Airways for carriage between its Puerto Rico and Brooklyn plants. No value was declared by Carousel on the airway bill. The wig shipment arrived without incident in New York, but armed robbers hijacked the truck carrying the wigs from the airport to the Brooklyn plant.

IHC made claim against both Affiliated and Fund. Affiliated denied liability on the ground that at the time of the theft the property was covered by Fund's policy and was therefore excluded from Affiliated coverage under the exclusionary provision quoted above. Fund denied liability on the basis that IHC had warranted to declare a twenty-five percent invoice value of the shipment to the carrier and had unintentionally failed to make such declaration, thereby breaching the warranty.

The precise question thus posed is whether, in view of Fund's complete defense to the claim made under its policy, the shipment of wigs was nevertheless "covered" by Fund's policy at the time of the theft, within the meaning of Affiliated's exclusionary clause. The district court held that it was not, and was therefore not excluded from coverage

---

* Of the Ninth Circuit, sitting by designation.

1. While IHC did not file a cross motion for a summary judgment, the district court adopted what is deemed the better practice of awarding summary judgment for a non-moving party if such party is entitled thereto. See 6 Moore's Federal Practice (2d Ed.) ¶ 56.12. Affiliated does not question this procedure.

under Affiliated's policy. We agree, and affirm.

 Affiliated is correct in asserting that the property was lost from a peril (theft) within the coverage of Fund's policy. Affiliated is also correct in noting that the warranty in the Fund policy which IHC breached is not an affirmative warranty, but is a promissory warranty. We can also agree with Affiliated that the breach of a promissory warranty does not void the policy as a whole, but may defeat the insured's right to recovery against the insurer for a particular loss. We do not agree with Affiliated that where an insurer has a complete defense against a claim for property loss because of a breach of a promissory warranty, the property is nevertheless "covered" by that policy within the meaning of the quoted provision of Affiliated's policy.

 The cases cited by the parties are noted particularly helpful in deciding the question here presented. For the most part, they point out the distinction between affirmative and promissory warranties and made it clear that only the breach of an affirmative warranty breaches the entire policy. But these decisions do not deal with the precise question of whether "covered" as used in an exclusionary provision such as Affiliated's includes a particular loss as to which the insurer has a complete defense because of the breach of a promissory warranty.

 We think that, absent language showing a contrary intent, a person buying a policy containing such an exclusionary provision would construe it as intended to preclude recovery against that insurer where the insured can be made whole from another underwriter. Affiliated's reading of its exclusionary provision is highly technical, to say the least, and, if given effect, would leave IHC unprotected.[2] Had Affiliated intended such a result it could have added language to its policy making it clear that a second policy protecting against the same peril constitutes other coverage unless circumstances render the second policy completely void.

 If "covered," as used in Affiliated's exclusionary clause, is susceptible of the meaning Affiliated attaches to it, the word is at least ambiguous. In that event the ambiguity must be resolved against Affiliated. Combined Mut. Cas. Co. v. Metheny, 203 Okl. 522, 223 P.2d 533, 535 (1950).

Affirmed.

---

2. In Federal Life Ins. Co. v. McAleer, 161 Okl. 251, 17 P.2d 681, 683 (1932), the Supreme Court of Oklahoma said:

"This court, beginning with the early case of Taylor v. Insurance Co., 25 Okl. 92, 105 P. 354, 138 Am.St.Rep. 906, and the case of General Accident Fire & Life Assurance Corp., Ltd., v. Hymes, 77 Okl. 20, 185 P. 1085, 8 A.L.R. 318, in a practically unbroken line of decisions, has adhered to the principle that the insurance company having prepared the contract, in case of ambiguity, should in return for its premium insure against injuries fairly embraced within the terms of the contract, and that the methods of a technical, legal analyst should not be applied to language which to a person of common understanding appeared to create an indemnity contract, when the premium was collected."