JOSE RIVERA SOLER & CO. v. UNITED FIRE-MEN'S INSURANCE COMPANY OF PHILADELPHIA.

No. 31.   Argued October 20, 1936.—Decided November 9, 1936.

*Mr. Francis H. Dexter* for petitioner.

*Mr. Henri Brown*, with whom *Mr. Carroll G. Walter* was on the brief, for respondent.

Mr. Justice McReynolds delivered the opinion of the Court.

Respondent, the Insurance Company, issued to petitioner a $30,000.00 fire policy covering certain personalty in Puerto Rico, distributed thus: $15,000.00 on stock of merchandise, unembroidered, embroidered and in the process of being embroidered, or for repairs, and on cost of labor performed thereon, including, etc.; $12,000.00 on machinery of every description, etc.; $3,000.00 on furniture, fixtures, etc.

After a fire, petitioner presented sworn proof of loss exceeding $35,000.00 and demanded payment of the full amount of the policy. This was refused. It then brought this action in the District Court of the United States for Puerto Rico to recover the sum demanded with interest. Claiming that the assured had acted fraudulently and had failed to comply with specified conditions, the Company denied any liability. There was a verdict for $17,000.00 plus interest; an appropriate judgment followed. A bill of exceptions, also ten assignments of error, were filed, and the cause went to the Circuit Court of Appeals, First Circuit.

That court, having heard the matter, affirmed the challenged judgment—May 25, 1935. The supporting opinion of that date states: "The defenses now relied upon rest upon breaches of what are commonly referred to as 'conditions subsequent,' the real defense being that the plaintiff's claim was essentially fraudulent. The provisions of the policy relied on in defense are the so-called 'Iron Safe' clause and condition 12."

The "Iron Safe" clause requires the assured to keep "a complete itemized inventory of stock on hand," and "a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments"; also that these shall be "securely locked in a fireproof safe at night" etc.

Condition 12 provides: "If the claim be in any respect fraudulent, or if any false declaration be made or used in support thereof, or if any fraudulent means or devices are used by the Insured or anyone acting on his behalf to obtain any benefit under this policy; . . . all benefit under this policy shall be forfeited."

The first seven assignments, relating to the failure of the trial judge to direct a verdict, also numbers eight and nine, were overruled.

The eighth assignment assailed the refusal to instruct that no evidence tended to support the $2,524.50 item for cost of labor found in the proof of loss; the ninth challenged the failure to instruct that there was nothing from which the jury could determine the market value of certain merchandise said to have been sold to the assured by its president.

Concerning the tenth assignment the Court said, "The value of the destroyed property as claimed by the plaintiff was about $34,000.00. The jury's verdict was for $17,000.00. The defendant contends that the verdict, fixing the value of the property at only about one-half of what was claimed in the proof of loss, established as a matter of law that there was fraudulent over-valuation by the plaintiff in the proof of loss. Obviously, this question could not arise until after the verdict; it amounts to a contention that the verdict in favor of the plaintiff was inconsistent and contradictory to the finding on damages. Questions of this character should be presented in the first instance to the trial judge. He has never passed upon this point. No ruling of his upon it was excepted to; no exception relating to it appears in the record. We cannot consider it."

A rehearing was granted. A second judgment followed (January 7, 1936) which vacated the earlier one and remanded the cause to the trial court "with directions to enter an order in arrest of judgment, with costs to the

appellant in both courts." An opinion, from which the judge who wrote the original one dissented, pointed out the reasons for the action taken. This considered only the tenth assignment of error and the one based upon failure to direct a verdict because no evidence tended to support the $2,524.50 item for "Labor on goods in process." Assignments based upon alleged violations of the "Iron Safe" clause were not discussed.

The court said: "Under the 10th assignment it is contended that the verdict and judgment are contrary to law, that the amount of the loss fixed by the verdict is so inconsistent with the proof of loss and the provisions of the policy, both of which are made a part of the pleadings, as to show that the plaintiff's sworn proof of loss was fraudulent as a matter of law." "Bills of exception are necessary to preserve exceptions to rulings made in the progress of the trial, but errors appearing on the face of the record proper need not be so preserved. In the court below the defendant could have made a motion in arrest of judgment, but no such motion was necessary." "In considering the question raised by the 10th assignment the evidence introduced at the trial and brought here by bill of exceptions is not to be considered, for that is no part of the record proper. The inquiry is confined to such matters as appear in the record proper. That record in this case includes the complaint, proof of loss and the policy (which are included in the complaint), the verdict and judgment." "It is perfectly plain that the verdict of the jury is entirely inconsistent with the allegations of the complaint and the proof of loss, and we think this disparity of nearly $18,000.00 shows on its face and as a matter of law that the sworn proof of loss was fraudulent and, if so, then, under the 12th condition of the policy, all benefit thereunder was forfeited. The verdict should have been either for nothing or in the neighborhood of $30,000.00."

Also: "Under the motion for a directed verdict the evidence introduced at the trial and included in the bill of exceptions is open for consideration. There is no evidence in the case and counsel for the plaintiff has pointed out none, though requested to do so, showing that the cost of labor 'on goods in process' was $2,524.50, as stated in the sworn proof of loss. The only evidence in the record relating to that subject is that given by Soler himself (president of the plaintiff company) where he states that the sum of $2,524.50 was the contract price which the company was to receive for manufacturing the goods of others. If the statement in the proof of loss, to which Soler made oath, did not represent the cost of labor, but was the contract price which the plaintiff was to receive from others for whom goods were being manufactured, no other conclusion can reasonably be drawn than that the statement in the proof of loss was knowingly made for the purpose of getting money from the insurance company that the plaintiff was not entitled to and was fraudulent. And, under Condition 12 of the policy, deprived the plaintiff of its benefits. Soler was the president of the plaintiff company and made oath to the proof of loss."

The second opinion holds in effect that fraud by the plaintiff conclusively appears on the face of the record without giving consideration to any evidence; also that fraud on its part with respect to the item "Labor on goods in process" included in the proof of loss so clearly appeared from the evidence that the defendant was entitled to a directed verdict.

We cannot accept the view that a conclusive presumption of fraud arose because the verdict was far less than the amount stated in the proof of loss. If the bill of exceptions be disregarded we must assume the jury was properly instructed—were told that condition 12 required a verdict for the insurer "if the claim be in any respect

fraudulent." The finding for the assured indicates that they discovered no fraud. Policy holders may present inaccurate proofs of loss without conscious dishonesty or intent to defraud; different views of values are common; memory is faulty; insurance company and assured often entertain widely different views concerning the policy; and evidence cannot always be produced to establish something declared to be true in entire good faith.

For like reasons we cannot say the trial judge, even if he thought there was complete failure to sustain the item for "Labor on goods in process," should have ruled that this alone was enough to show fraud and required a directed verdict for the Company. Condition number 12 was read to the jury and declared to be "legal and part of the conditions of the contract." He also charged clearly enough that any dishonest claim made with intent to defraud would render the policy inoperative. Nevertheless the jury found for the assured. In these circumstances we cannot say there was a conclusive presumption of purpose to defraud.

Although the court below, in its first opinion, clearly overruled assignments based upon the "Iron Safe" clause and said nothing about them in the second, counsel insist that they are before us and adequate to support the questioned judgment. If, in the circumstances they can be considered at all, it is enough to say that the jury was well instructed concerning the necessity of complying with that clause; the verdict negatives the notion of fraud. There was conflicting evidence; the weight to be given this was for them to determine.

The judgment of the Circuit Court of Appeals must be reversed. We find no material error in the action of the District Court, and its judgment is affirmed.

*Reversed.*

Mr. Justice Stone took no part in the consideration or decision of this case.