Joseph M. FRAYLON and wife, Imedow Fraylon, Plaintiffs,

v.

The ROYAL EXCHANGE ASSURANCE, Defendant.

Civ. No. 856.

United States District Court
M. D. North Carolina,
Greensboro Division.

May 31, 1955.

4. See Petition of Bozin, D.C.S.D.Cal.1947, 70 F.Supp. 5.

Block, Meyland & Lloyd, Greensboro, N. C., Brock Barkley, Charlotte, N. C., for plaintiffs.

Smith, Moore, Smith & Pope, Greensboro, N. C., for defendant.

HAYES, District Judge.

The plaintiff is a negro minister without experience or knowledge of fire insurance. He resides at Charlotte, N. C. He purchased some real estate in Greensboro in 1950 for $2,500. There was a four room house with a shed or lean-to on the back of it. The building was condemned by the city fire department and he applied and obtained a permit to repair it. However, the city Inspector objected to the type of repairs undertaken and thereafter with the approval of the Inspector he practically built a new house, although he used the hull frame, the remodelling resulted in a 15 room two story house. For all practical purposes it was a new building.

As this building was nearing completion he wrote Wimbish Insurance Agency of Greensboro to insure this building and other buildings not material here. As to this building, he wrote: "The fifteen room house is new please insure for $8500.00" The Agent did not bother to look at the property but phoned plaintiff to inquire the distance to a fire hydrant from the building in order to determine the rate. No mention was made by plaintiff about his assuming payment of a mortgage on the property nor of the fact that there were a total of $6757.50 of which $3800 was also secured on other real estate. Plaintiff did not know that the liens had anything to do with the insurance and did not knowingly or intentionally conceal the facts from the Agent.

The defendant issued its standard policy insuring the building for $8500 from Jan. 8, 1953 to Jan. 8, 1954, and typed on the printed form "Additional Insurance permitted," without specifying in the printed form the amount limited.

On January 30th, the building was completed except for some plumbing but fit for occupancy and a tenant went into possession under a written contract of lease for one year at $30 a week and of purchase one year thereafter at the price of $25,000 of which $5,000 was to be paid by Feb. 1, 1954 and $25 every week thereafter with interest. If the down payment was made, then the rents were to be credited as if the purchase had been made Feb. 1, 1953. Plaintiff applied to an agent of Bankers Fire Insurance Company for $10,000 on this building, stating to whom he owed mortgages on the property and the policy was issued with loss payable to mortgagees.

The building was destroyed by fire March 11, 1953, between 11 and 12 P. M. although enough of building was intact to see the arrangements, rooms, etc. The man who had supervised the erection of the building 'phoned the plaintiff in Charlotte at which time the tenant came to phone plaintiff.

The adjuster for defendant and the other Company reached the premises before plaintiff arrived. The adjuster inspected the building and concluded its value was $6,000. He told plaintiff he had it insured for three times its value. Plaintiff insisted that it had cost in excess of $20,000 and he believed its value was more than that. Plaintiff furnished the adjuster the names and amounts of liens, the source and cost of material, the labor. At adjuster's request he obtained bids from three construction men to replace the building as was, the most convincing being that of Coe, a reputable and extensive contractor of Greensboro whose bid exceeded $16,000.

There was very close cooperation between the adjuster, the city police and the state fire investigator in an effort to show a fraudulent fire but no evidence was found to warrant a prosecution. However, after a conference among them, the adjuster, on April 7, wrote plaintiff asking him to file proofs of loss. This was done for the deliberate purpose of laying the foundation for the criminal prosecution which promptly followed. The adjuster had already been furnished the facts and the proof of loss had been waived. He knew the plaintiff claimed the building was worth around $25,000. All were in agreement that the lot had little value.

Plaintiff filled out the blank proof of loss, or it was prepared for him by his lawyer, Lamar Caudle, Esquire, in which he placed the actual cash value of the building at about $23,000. When the adjuster received it, he immediately wrote plaintiff that "it can not be accepted on account of misrepresentations avoiding the policy, including among others misrepresentations as to existing encumbrances, and age, condition and value of property, because the amount claimed is excessive and for other reasons." A warrant was procured for the arrest of plaintiff for making a false claim under oath and he was indicted, tried and convicted at the October term, 1953 of Guilford Superior Court. The adjuster was a very material witness. The Supreme Court reversed the conviction for that the evidence was insufficient to raise more than a mere suspicion or conjecture as to the good faith of the defendant in fixing the value of the damaged structure at the time of fire at $23,000 in his proof of claim for loss and the defendant's motion for non-suit should have been allowed. State v. Fraylon, 240 N.C. 365, 82 S.E.2d 400.

The evidence does not sustain the defenses asserted, only one of which deserves serious consideration, to-wit: the alleged false swearing as to value.

■ The court had great difficulty in determining the actual cash value of the building at the time of its destruction but arrived at the sum of $14,000. There is a difference between the actual cash value and the fair market value. In Andrews v. Great American Insurance Co., 223 N.C. 583, 27 S.E.2d 633, a new trial was granted because the court instructed the jury to award the difference in fair market value immediately before and after the fire.

■ The standards for arriving at the fair market value are well defined. It is the price it will bring on the market by a willing buyer under no compulsion to buy and sold by a willing seller under no compulsion to sell. But there are innumerable difficulties encountered to ascertain that fair market value which is a matter of opinion unless the property or something identical has been sold. Expert opinion then becomes the only means available and it will be difficult to get two or more to agree on the same value. The value of the opinion evidence will depend upon the witness's experience, ability and reliability and his disinterestedness.

■ The standards for arriving at the actual cash value of the property are not so well defined and the means of determining it are unsatisfactory. Estimates or opinions have far less considerations to support them. Cash sales of real estate of this character are rare. Indeed cash sales of rental property in the City of Greensboro are not frequent enough to establish a definite guide.

The best enlightenment coming to our attention is found in Globe & Rutgers Ins. Co. v. Prairie Oil & Gas Co., 2 Cir., 248 F. 452, at page 457: "The actual cash value of the oil at the time of the fire was to be the measure of damages, but it could not exceed what it would cost the insured to replace it. The cash value of an article is the amount of cash for which it will exchange in fact. Ankeny v. Blakley, 44 Or. 78, 74 P. 485; National Bank of Commerce v. City of New Bedford, 155 Mass. 313, 29 N.E. 532. And cash value is the market value for which an article will sell for in cash on the market. Missouri, K. & T. Ry. Co. of Texas v. Murray, Tex.Civ.App.,

150 S.W. 217, 218; Frick v. United Firemen's Ins. Co., 218 Pa. 409, 67 A. 743." The actual cash value of the building was its fair market value in cash at the time of fire. This court has fixed $14,000 as the actual cash value. Does the claim by plaintiff that it was $23,000 constitute a false oath and claim, destroying his right to recover his loss?

In State v. Fraylon, supra [240 N.C. 365, 82 S.E.2d 403], it is said: "The real question to be determined in considering the defendant's motion for judgment as of nonsuit is whether the evidence in the trial below, when considered in the light most favorable to the State, tended to prove that defendant 'willfully and knowingly' presented 'a false and fraudulent claim' and presented 'proof in support of such claim,' or did it merely raise a suspicion or conjecture as to his guilt of the charge contained in the bill of indictment." The court concluded: "We do not think the filing of the proofs of claim for the full amount of the insurance sufficient to show that the defendant 'willfully and knowingly' violated the statute involved for the purpose of collecting a false claim". The court very appropriately observed: "The proofs of claim contain no information that conflicts with the defendant's contention with respect to the value of his property at the time of the fire, except he listed the value of the damaged building as being $23,000 instead of $25,000 as he had theretofore contended. Where the facts are available to all parties, the question as to the value of a damaged building at the time of a fire resolves itself largely into a matter of opinion by qualified witnesses. 'Value is necessarily a matter of judgment, and, furthermore, a matter of judgment in which each person is prone to err in overestimating his own. Of course, overvaluation is an evidence of fraud, but it does not amount to fraud where it expresses the bona fide opinion of the insured.'"

The plaintiff had ample reasons to support his opinion about value; the cost of materials and labor; the rental value and the sale contract. Of course he would think it was worth the highest figure as would most owners. There was a total of $18,500 of insurance on his claimed loss of $23,000 which the court found had an actual cash value of $14,000.

It is clear that to deny the recovery of the amount solely on account of an over valuation of the building when it only represented his *bona fide* opinion or estimate would constitute a forfeiture of his right—a very dangerous and severe penalty to inflict in the absence of satisfactory proof that he knew that he was filing a false claim with a bad motive.

The determination of actual cash value of the property at the time of fire, whether made by a jury or by the court acting as a jury, does not constitute an infallable value. At most it represents the opinion of the fact-finder, based on the opinion evidence before it. If we could assume that $14,000 is the unerring actual cash value, it does not follow that plaintiffs' sworn proof of loss for $23,000 in order to collect his $18,500 of insurance, or part thereof, was false. Some additional facts should be shown. The Supreme Court held that there was no conclusive presumption of fraud because the verdict was far less than the amount stated in the proof of loss. In Jose Rivera Soler and Co. v. United Firemen's Insurance Co., 299 U. S. 45, at page 50, 57 S.Ct. 54, at page 56, 81 L.Ed. 30, it said: "Policyholders may present inaccurate proofs of loss without conscious dishonesty or intent to defraud; different views of values are common; memory is faulty; insurance company and assured often entertain widely different views concerning the policy; and evidence cannot always be produced to establish something declared to be true in entire good faith."

Judgment in favor of the plaintiff will be entered for the defendant's pro rata part of the loss.