Alexander WOODS, aka Alex Woods, dba Truck Service Center, Plaintiff,

v.

INSURANCE COMPANY OF TEXAS, Inland Empire Insurance Company, and Houston American Insurance Company, and Coffey-Simpson Agency, Inc., Defendants.

Civ. No. A–10903.

District Court, Alaska,
Third Division, Anchorage.

Nov. 30, 1956.

Buell A. Nesbett, Anchorage, Alaska, for plaintiff.

David H. Thorsness, of Davis, Renfrew & Hughes, Anchorage, Alaska, and John E. Manders, Anchorage, Alaska, for defendants.

McCARREY, District Judge.

This case was tried before the court without a jury. The plaintiff owned and operated a truck and car repair service and sued the above-named defendant insurance companies for their failure to pay him for the fire loss he sustained on the following policies:

Insurance Company of Texas, policy number 6Y0913, fire, lightning and extended coverage of $15,000 on building, equipment, tools and property of every description "in premises under course of construction;"

Insurance Company of Texas, policy number OP-14, fire, lightning and extended coverage of $10,000 on stock of parts;

Houston American Insurance Company, policy number SF 18-01546, fire, lightning and extended coverage of $5,000 on stock of parts; and

Inland Empire Insurance Company, policy number 13251, fire, lightning and extended coverage of $10,000 for stock of parts.

The plaintiff carried $15,000 on the building and garage equipment and $25,000 on parts.

The insured property was located on the west one-half of a lot located two miles east of the City of Anchorage on the Glenn Highway, northeast of the Alaska National Guard building. It was totally destroyed by a fire which occurred at 2:50 a. m. on the 6th day of December 1954.

Judgment on the pleadings was granted to the defendant Coffey-Simpson Agency, Inc.

The insurance companies predicated their defense on the grounds of the concealment of fraud, conspiracy for the purpose of endeavoring to procure exorbitant insurance coverage and fraudulently collect from the underwriters, and stated that the defendant with " * * * fraudulent intent to wrongfully collect the insurance proceeds, caused the fire to be set, and thereafter orally, in writing, and in sworn statements in his purported

proofs of loss and in his examination under oath, was guilty of fraud and false swearing in connection with the facts surrounding the fire and in making false claims as to exorbitant amounts of stock which he claimed had been destroyed by the fire in question and in making false and fraudulent statements as to the type of stock purportedly destroyed by the fire, where he purportedly obtained the same, and the amount he purportedly paid for the same", in violation of the provisions contained in the contracts of insurance.

The plaintiff Alex Woods, age 34, was born in Scotland and came to Canada with his parents. He is now married and has one child. Prior to coming to Alaska he was engaged in the automotive business with his brother in the northwestern part of Canada. In October 1950, plaintiff came to Alaska, and sometime later his wife and child followed. They resided in Fairbanks until they moved to Anchorage.

In May of 1954, plaintiff opened the Woods Auto Body Shop at Anchorage, and on or about the first of September 1954, he subleased a garage and some land from one James Burke, and at the time of the fire, plaintiff was in the process of enlarging these premises some 40 x 100 feet. The original garage of Burke's and the addition were both completely destroyed in the fire. Plaintiff testified he had spent some $12,000 on this new construction which was almost completed at the time of the fire except for the installation of insulation and a few other minor things. An expert witness called by the plaintiff testified that, given the size and type of construction, the building was worth $11,650 based upon costs of construction in 1954. This figure did not include the concrete slab or the bracing. The plaintiff admitted that he had used dunnage and "used" lumber in the construction of the premises in order to keep down the costs. In a statement conflicting with defendants' evidence, plaintiff testified that the agents of the defendant Coffey-Simpson Agency, Inc., came to him and sold him the insurance without his solicitation. A representative of the defendant Coffey-Simpson Agency, Inc., testified that the insurance was issued upon the condition that the plaintiff would install what is commonly known in the construction business as a "Van-Packer" chimney (used for safety factors). The plaintiff denies this but he admits that it was discussed and that he did try to obtain such a chimney from one of the local plumbing firms. The insurance policies do not contain such a "rider" or any qualification reflecting this to be the condition upon which the insurance policies were issued, although some of the policies do contain certain other "riders".

On the day of the fire, the plaintiff was on his way to, or had arrived at, Whitehorse, Yukon Territory, in Canada, which is some 725 miles from Anchorage by highway.

On the 30th day of December, he submitted his proof of loss to the defendants, which is marked plaintiff's exhibit number 9, after notice of the loss had been given to the Coffey-Simpson Agency, Inc. The proof of loss shows that he claimed to have lost $6,656.07 on the equipment inventory, $12,000 on the frame shop, and $25,647.32 on the stock inventory, as reflected in detail by such proof of loss. (See plaintiff's exhibit number 9.)

The plaintiff testified that all of the records were destroyed except such as he had in the glove compartment of one of his cars, and such as he was able to obtain from some of the local automotive businesses. It is to be noted that the proof of loss of both equipment and stock inventory is, nevertheless, in detail. The plaintiff explains this by the fact that he was extremely familiar with the inventory as he had recently purchased it all himself and that he had virtually complete custody and control of the stock room.

Examination of the plaintiff by the defendants was extensive and detailed as to the plaintiff's finances from the year 1950 up to the time of the fire, and as to

the inventory in the stock room and from whom it was purchased.

Income tax returns of the plaintiff and his wife disclosed that their gross income was $2,744.10 in 1950, $7,824.16 in 1951, $12,177.08 in 1952, $15,134.13 in 1953, a gross of $40,000 in 1954, with a net loss of $11,871.33 for that year. Plaintiff testified that he had some $28,000 in cash located in a trailer wherein he and his family had resided at Anchorage, which money he had used to go into business and which represented savings from their earnings, $5,000 which he had borrowed from his mother in Canada, and his half interest in the Canadian partnership business with his brother. He testified the money had been kept in the trailer as his father had taught him not to use the banks, although the record stands uncontradicted that he had a small banking account at the same time and that on other occasions he and his wife had used the bank facilities. Further, in a domestic relations proceeding, he made an affidavit in civil case number A-9382, in December 1953, to the effect that his net worth was $337, and stated "affiant has no additional moneys". The plaintiff testified he used this money to go into business in 1954 and after the fire he owed some $16,000. He also testified that he lost approximately $4,000 in accounts receivable which were due and owing at the time of the fire because the work sheets, parts billings, etc., had been destroyed by the fire. He had approximately $1,000 in cash on his person at the time of the fire.

Cross-examination of the plaintiff was lengthy and impeachment was attempted consistently by pointing up statements made in a deposition prior to the time of trial, and statements later made from the witness stand, i. e.: plaintiff testified that he had purchased 85% of his parts from one Mike Lewis, whereas during the course of the trial he testified it was some 50%; the amount of debts he owed; the size of the building; the amount of labor expended on the building; the fact that he did not mention receiving any money from his mother and from his former partnership with his brother in Canada at the time the deposition was taken, whereas during the trial he testified he got some $5,000 from his mother and nearly that much from the partnership business. The plaintiff explained these inconsistencies by stating that he was not asked specific facts about where the money came from, and that his figure concerning the spare parts purchased from Mike Lewis was only approximate as he did not have any facts before him to refresh his recollection at the time the deposition was taken, whereas, he has gone over his proof of loss since that time; in checking the items, he now knows where they were purchased.

Defendants called witnesses who testified that Mr. Burke had purchased a number of surplus items which were stored on a portion of the premises leased by Mr. Burke and near the property herein destroyed. Also, a number of the items found in the debris after the fire, by employees of the defendants, were used and obsolete parts. In fact, the defendants employed one Jaidinger and one Martin who went through the entire debris, shovelful by shovelful, making notations of the parts and things they found, which total tabulation was admitted in evidence as defendants' exhibit "C". This exhibit consists of some 14 pages and lists items which these employees testified they took off of the concrete slab. A number of such items were testified to as being used, old and obsolete. The testimony of these witnesses was corroborated by one Bruce Parker, fire insurance adjuster, who had been engaged in such business since 1920. The plaintiff had one John Eder, who had been engaged in the automotive parts business since 1946, price these parts new in Seattle. This list totaled $20,106.29. This did not take into consideration the fact that paint, gaskets, scotch tape, air hose, priming liquids and oil, estimated to be in the value of some $2,700, were not included in such inventory.

Fire Chief George Burns, of the City of Anchorage, testified that the fire was called in at 2:49 a. m. and that he arrived on the scene within minutes. When he arrived at the scene, he found the entire building ablaze. He testified that the fire was an extremely hot one and that they used some 8,300 gallons of water but were unable to bring it under control because of the intense heat and the start it had prior to the Fire Department's arrival. He admitted on cross-examination that he did not know there was paint stored in a part of the building and testified that paint was a highly inflammable substance.

The financial condition of the plaintiff was attacked by the defendants wherein they endeavored to produce testimony by Mr. Burke and others as to the amount of business that the plaintiff was doing at the time of the fire in an effort to show his hard-pressed financial condition and, thus, show his inability to have had a business that would have warranted purchasing the large inventory he alleges to have lost by reason of the fire. It was also brought out that a surplus stove obtained by the plaintiff prior to the fire was not properly operative, thus implying it may have been the cause of the fire, and that the plaintiff was negligent in this respect and thereby caused the fire to be set.

In rebuttal, the plaintiff called witnesses who testified that the stove had not been hooked up at the time they left the establishment, after locking the same, the night before the fire. At the conclusion of the plaintiff's case, and again at the close of the trial and prior to argument, the defendants moved for judgment for the defendants. Decision was reserved in conformance with rule 41b. Because of the type of case and the pleadings, I was constrained to go into the evidence more in detail than is customary.

There are two questions to be determined in this case. The first is whether or not the plaintiff was guilty of fraud of such a nature that would vitiate the contract as provided under the clause: "*Concealment, fraud.* This entire policy shall be void if, whether before or after loss, the assured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the assured therein, or in case of any fraud or false swearing by the assured relating thereto."

The second question is whether or not the plaintiff has proved a prima facie cause of action that would entitle him to a judgment under his contracts of insurance.

The fact situation in this case is fraught with suspicion of fraud, especially concerning the stock of parts. The testimony of the plaintiff indicated that more than half of the parts stocked were purchased from one Mike Lewis. Mr. Lewis was not produced in court nor was there any indication from the plaintiff why his testimony could not have been received other than that he was unable to serve Mr. Lewis with a subpoena, although the file discloses that the case was originally set for trial August 14, 1956 for September 10, 1956, only to be re-set for trial September 17, 1956 on August 20, 1956. The plaintiff's wife, who should have been able to shed some light on the acquisition of the stock of parts, likewise was not produced, nor were any witnesses from the automotive business called to corroborate testimony of the plaintiff concerning purchases made from them. Mere suspicion of fraud, however, is not sufficient to justify a finding that the insurance contracts should be voided. The defendants, according to the authorities, had the burden of proving circumstances enabling them to avoid a contract. Concerning fraud in the inducement of the contract and the purported setting of the fire by the plaintiff, defendants' proof is wholly wanting. Concerning the allegation of false swearing on the proof of loss, however, there is testimony favoring defendants' contention. There is doubt as to the plaintiff's financial ability to purchase extensive stock of parts at the time of the purported

purchase. This is further supported by plaintiff's inability to produce substantial proof of his acquisition of these parts.

This court has made a rather exhaustive search of the authorities in regard to vitiation of the contract for fraudulent overstatement in proof of loss. The leading case seems to be Claflin v. Commonwealth, 1884, 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76. This case is relied upon by both parties to support their respective positions. The Supreme Court of the United States, in the Claflin case, ruled that any wilful and material false statement made with the intent to deceive the insurer in the proof of loss would vitiate the contract. It should be noted that there must be intent to deceive. In First National Bank v. Hartford Fire Insurance Company, 1877, 95 U.S. 673, 24 L.Ed. 563, however, the insured stated a loss of some $30,000 when, in fact, the actual value was $20,000. The same court said that this did not vitiate the contract. The same result was reached in Soler & Co. v. United Firemen's Insurance Company, 1936, 299 U.S. 45, 57 S.Ct. 54, 56, 81 L.Ed. 30. There the Supreme Court sustained a judgment entered on a $17,000 jury verdict when the proof of loss claimed twice that amount. This language of the court is valuable: "Policy holders may present inaccurate proofs of loss without conscious dishonesty or intent to defraud; different views of value are common; memory is faulty; insurance company and assured often entertain widely different views concerning the policy; and evidence cannot always be produced to establish something declared to be true in entire good faith."

It is the opinion of this court, based on the authorities, that the burden was on the defendants to prove fraud by clear and convincing evidence. Imperial Assurance Company v. Joseph Supornick & Son, 8 Cir., 1950, 184 F.2d 930. The defendants have failed to satisfy this court by clear and convincing proof that there was fraud sufficient to invalidate the contracts.

Now to the second question, and that is whether or not plaintiff has proved a prima facie cause of action against the defendants to entitle him to a judgment under his contracts of insurance. I am of the opinion that the plaintiff has, but not in the amounts insured sued upon. I find that the plaintiff is entitled to the sum of $13,500 upon the garage and service equipment. I further find that a considerable number of the parts were either used or obsolete and, therefore, find their value to be in the sum of $14,750.

Let judgment be entered accordingly and the plaintiff is hereby instructed to prepare findings of fact, conclusions of law and decree consistent hereto.