# ARTHUR McCULLEY v. CHEROKEE INSURANCE COMPANY.

# ARTHUR McCULLEY v. UNITED STATES FIDELITY & GUARANTY COMPANY.

# ARTHUR McCULLEY v. HARTFORD FIRE INSURANCE CO.

# ARTHUR McCULLEY v. HANOVER FIRE INSURANCE CO.

# ARTHUR McCULLEY v. FIREMANS FUND INSURANCE CO.—359 S. W. (2d) 561.

Eastern Section. March 27, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

Asquith, Asquith & Jones, Knoxville, for plaintiff in error.

O'Neil, Jarvis, Parker & Williamson, Knoxville, O. T. Sloan, Madisonville, for defendants in error.

COOPER, J. These five suits, which were consolidated for trial, were brought by the plaintiff seeking to recover for the loss by fire of personal property insured by the

several defendants. Each defendant, through its agent Romines-Wallace of Sweetwater, Tennessee, issued a policy in the face amount of $3,000.00 insuring the contents of the plaintiff's warehouse building located near the Dixie-Lee Junction (junction of U. S. Highways 70 and 11) about 5 miles north of Lenoir City, Tennessee. The warehouse and contents were totally destroyed by fire on December 31, 1958.

In his declarations, the plaintiff alleged that he properly notified each defendant of the fire and his loss, and complied with the terms of the policies of insurance, including the furnishing of proof of loss; but that the defendants arbitrarily refused to make payment under the policies. Plaintiff then asked that he be awarded a judgment for the full amount of each policy, with interest and statutory penalty.

The defendants filed identical pleas, as amended, denying liability on the grounds that

(1) plaintiff's claim of loss was excessive, rendering the policy null and void;

(2) plaintiff had failed to comply with the provision of the policy concerning proof of loss;

(3) plaintiff misrepresented material facts and circumstances following the loss, and deliberately overvalued his loss, breaching the provisions of the policy and rendering it null and void; and

(4) the suit was premature in that the purported proofs of loss did not comply with the provisions of the policy with respect to substantiation of the amount claimed.

After hearing the proof, the court directed a verdict for the defendants on the issue of the statutory penalty and submitted the other issues to the jury. The jury returned a verdict in favor of the plaintiff and awarded damages in the amount of $7500.00. The trial court then entered a judgment against all defendants for the sum total of $7500.00.

The defendants moved for a new trial and a directed verdict on numerous grounds. In sustaining these motions, the trial court stated:

"The plaintiff's insistence in the beginning was that the value of that merchandise * * * was something over Nineteen Thousand Dollars * * * and he insisted at the trial, in his testimony, that it was even more than that by virtue of his having remembered that he had omitted certain items from his original list submitted, * * *.

"He had been called upon to produce supporting documents in the form of invoices and cancelled checks and he had asserted at one time or another that he had those documents and then later took the position that they were destroyed in the fire, and then he was called upon to produce from the vendors duplicates of the invoices * * *. [H]e did not produce or offer to present to the Court one duplicate invoice or one cancelled check or anything whatever to support his contention as to the value of the destroyed property, notwithstanding the fact that he had previously and repeatedly been called upon to support his claim with such documentary evidence. Notwithstanding the fact that he must have known, as a reasonable man, in view of all that transpired by way

of discovery depositions and investigations, *that the issue, the great presiding issue in the trial of his lawsuit, would be his veracity,* he did not offer or make any pretense to buttress his case or to fortify his position by any evidence that was easily available to him. * * * [emphasis supplied]

*        *        *        *        *

"Now then one of the grounds of the motion is that the verdict is such as to evince passion, prejudice and unaccountable caprice on the part of the jury. How did the jury arrive at this verdict: It is not as though there were a discrepancy of a few dollars or even of several dollars between the verdict and the plaintiff's testimony as to his damage * * *. Now there is a wide gulf between those figures, and how do you account for that? How can it be explained upon any reasonable basis? It was not a matter of reducing the plaintiff's damages because of any act or omission on his part, such as we have in automobile accident cases, where the question of remote and indirect negligence on the part of the plaintiff is involved * * *. There is nothing like that involved here, * * *. There is no proof on the defendant's side that would justify Seventy-Five Hundred Dollars ($7500.00) as a verdict by the jury. The plain fact is that the jury just split each of those policies in half. Now then it is obvious that in so doing, this jury (1) did not believe the plaintiff's testimony; (2) must have believed that he knowingly and wilfully misrepresented his loss; and (3) that the jury therefore was guilty of unaccountable caprice and prejudice and passion in just splitting those policies in half arbitrarily and

giving the plaintiff half of the amount of his insurance * * *.

"I have never seen a man on the witness stand who became so hopelessly entangled in falsehoods as that man did, that plaintiff. He evaded every question as long as he could, he squirmed like a worm in hot ashes from the time he got on the witness stand until he got off, and it must have been plain to any seasoned lawyer that he was falsifying over and over and over and over again * * *. He claimed in his original list, submitted under oath, that those items were worth the amounts that he set opposite them, and the proof is that only a matter of days or weeks before the fire, a short period of time at the most, he bought them on the open market for only a fraction of what he claimed their value was. The jury didn't believe him, that is manifest. I don't think any other reasonable man could have believed him.

"Now upon this motion for a new trial, the Court sits as the thirteenth juror. The Court had reasons for not sustaining the motions for peremptory instructions at the time; but now, upon this motion for a new trial, in view of what has gone into this record, the Court feels that the plaintiff's testimony was a fabrication of falsehood and that from the beginning, even up to and including his testimony on the witness stand, he has so callously and so falsely misrepresented material facts that he cannot be allowed to prevail."

The plaintiff filed motions "to vacate and set aside the directed verdicts and reinstate the verdict of the jury; or, in the alternative, to grant the plaintiff a new trial".

When these motions were overruled, the plaintiff perfected his appeal.

In his assignments of error, the plaintiff contends that the trial court erred in sustaining the defendants' motions for a new trial and in directing a verdict for the defendants in that the "issues as joined, and all of the evidence addressed thereto, were matters upon which reasonable minds might differ, and were thus matters peculiarly within the province of the jury."

In these cases, it was undisputed that the plaintiff purchased the warehouse in question on October 13, 1958 in order to conduct auto and furniture auction sales. Preparatory to opening for business, the plaintiff purchased a large quantity of furniture, mostly used, and stored it in the concrete block building. The plaintiff also moved furniture from his home in Harrogate, Tennessee.

The building was insured through the Pickell Insurance Agency in nearby Lenoir City, Tennessee, and that agency placed insurance covering the contents of the building through the Romines-Wallace Insurance Agency, Sweetwater, Tennessee. The Romines-Wallace Agency issued the policies that are the subject of these suits on December 5, 1958, and the premiums were paid.

These policies provided that they "shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto". The policies also contained the usual "requirements in case loss occurs".

The warehouse and its contents were destroyed totally by fire on the night of December 31, 1958. Notice was given the agent of the various insurance companies, and they had an investigation made by an employee of General Adjustment Bureau, a fire adjusting company owned in part by the defendant insurance companies. The plaintiff filed, as his proof of loss, an itemized inventory, which he represented to be a true and exact inventory of his stock of merchandise at the time of the loss of the best of his knowledge and belief.

The dispute, as shown by the pleadings, evidence and the trial judge's memorandum set out in detail above, was as to the nature and value of the personal property destroyed in the fire, and whether the plaintiff had deliberately overvalued the destroyed goods in his sworn proof of loss and thus breached the conditions of the policy.

The record shows that the plaintiff testified that at the time of the fire, he was in the process of inventorying the furniture in the warehouse, and that he filed his itemized proof of loss from his knowledge of the inventory; that he had discovered some items left off the proof of loss and that his actual loss exceeded the itemized inventory filed with the defendant companies. The plaintiff further testified that he knew the value of the items as he had personally purchased a number of the articles, and had given his employees the money with which to purchase the other. The plaintiff further testified that he had been auctioneer at many furniture sales and knew the value of the various articles of furniture.

The defendant subjected the plaintiff to a rigorous cross-examination on each item and then introduced num-

erous witnesses who testified contra to the plaintiff on the issues of value, cost price, number of items purchased, number of items found in the debris of the fire, etc., which, if believed, would show that plaintiff had deliberately overvalued the destroyed property.

This testimony, in our opinion and in the opinion of the trial judge, presented one overriding issue—the credibility of the witnesses, particularly the plaintiff. This issue, together with the other controverted issues of fraud, false swearing and overvaluation, were issues of fact for the jury to determine. Constitution of Tennessee, Article I, Sec. 6, and Article VI, Sec. 9; Newark Fire Ins. Co. v. Martineau, 26 Tenn. App. 261, 170 S. W. (2d) 927, 929; Higgins and Crownover, Tennessee Procedure in Law Cases, Sec. 1387.

The trial judge's duty, in passing on controverted issues of fact as the 13th juror, is to weigh the evidence and independently determine if he is satisfied with the jury's verdict, Dykes v. Meighan Construction Company, 205 Tenn. 175, 326 S. W. (2d) 135; Howell v. Wallace E. Johnson, Inc., 42 Tenn. App. 15, 298 S. W. (2d) 753; McLaughlin v. Broyles, 36 Tenn. App. 391, 255 S. W. (2d) 1020; and where he is dissatisfied, it is his duty to grant a new trial. Hime v. Sullivan, 188 Tenn. 605, 221 S. W. (2d) 893; Wakefield v. Baxter, 41 Tenn. App. 592, 297 S. W. (2d) 97; Caruthers, History of a Lawsuit, 7th Edition, Section 413. He cannot go further and direct a verdict for a defendant because he did not believe the plaintiff's story. Stanley Bird Motor Co. v. Alley, 1 Tenn. App. 202, 206.

In Higgins and Crownover, Tennessee Procedure in Law Cases, Section 1387, it is stated:

"A trial judge goes beyond his constitutional powers when he enters upon a consideration of the worthiness or unworthiness of the witnesses or the probability of their truthfulness, or when he in any degree enters upon the business of weighing the evidence in order to determine where the preponderance, great or small, lies, or how a conflict in the evidence should be resolved. He cannot invade the province of the jury in disposing of a motion for a directed verdict. He is not justified in sustaining such a motion simply because he does not believe the witnesses of the adverse party. Nor is the rule any different where the witnesses of the adverse party have been impeached or contradicted. If competent to testify at all, the evidence of witnesses, however vigorously assailed, must be determined by the jury and not by the Court."

In the present cases, it must be conceded, we think, that the evidence introduced by the defendant raises a serious doubt or suspicion as to the actual value of the destroyed property in his proof of loss. However, there was probative evidence pro and con on these issues, and the jury, after being correctly and fully charged on the issues found in favor of the plaintiff.

In the light of the above authorities, we are of the opinion that the trial judge, being dissatisfied with the verdict of the jury, could and should have set it aside, but that it was error for him to go further and direct a verdict for the defendants.

It is strongly urged by the defendants that since the amount of damages awarded the plaintiff by the jury was only one-third of the valuation plaintiff placed upon

the destroyed property, plaintiff's valuation was such an overvaluation as would void the policy as a matter of law and justify the trial court's action in directing verdicts for the defendants. This is a large discrepancy but according to the weight of authority such a difference does not as a matter of law establish fraud, false swearing, or overvaluation as would avoid the policy of insurance. 20 A. L. R. 1164; 56 A. L. R. 390; 29A Am. Jur., Insurance, Section 1961, p. 1016.

As stated in Fraylon v. Royal Exchange Assurance, D. C., 131 F. Supp. 676, 679:

"The determination of actual cash value of the property at the time of fire, whether made by a jury or by the court acting as a jury, does not constitute an infallible value. At most it represents the opinion of the fact-finder, based on the opinion evidence before it."

In Jose Rivera Soler & Co. v. United Firemen's Insurance Company, 299 U. S. 45, 50 57 S. Ct. 54 at page 56, 81 L. Ed. 30, the Supreme Court of the United States held that there was no conclusive presumption of fraud because the verdict was far less than the amount stated in the proof of loss, stating:

"Policyholders may present inaccurate proofs of loss without conscious dishonesty or intent to defraud; different views of values are common; memory is faulty; insurance company and assured often entertain widely different views concerning the policy; and evidence cannot always be produced to establish something declared to be true in entire good faith."

■ As to the plaintiff's insistence that this court should re-instate the judgment which was entered on the verdict of the jury, Judge Tomlinson stated, in Dykes v. Meighan Construction Co., supra, 205 Tenn. at page 186, 326 S. W. (2d) at page 140, that:

"An appellate court has never had the power to reinstate a jury's verdict which the trial court has set aside because, he, the trial judge, did not approve the fact conclusion reached by the jury on evidence, pro and con, submitted to it. * * * He is the 13th juror but it would be an anomaly to make an appellate court the 13th juror."

For the reasons indicated, the judgments dismissing the suits are reversed, and the causes are remanded for a new trial. Costs of the appeal are adjudged against the defendants equally, and their sureties.

McAmis, P. J., and Hale, J., concur.