313 F.2d 783
 BADGER MUTUAL INSURANCE COMPANY, Lititz Mutual Insurance Company, Implement Dealers Mutual Insurance Company, Iowa Mutual Insurance Company, the Yorkshire Insurance Company of New York, the Commercial Union Fire Insurance Company of New York, the London Assurance and the Travelers Indemnity Company, Appellants,
v.
Claud B. MORGAN, Appellee.
 No. 19204.
 United States Court of Appeals Fifth Circuit.
 February 27, 1963.
 Rehearing Denied April 22, 1963.
 
 E. Dixie Beggs, of Yonge, Beggs & Lane, Pensacola, Fla., A. Frank O'Kelley, Charles H. Spitz, Keen O'Kelley & Spitz, Charles Friend, Tallahassee, Fla., for appellants.
 Mallory E. Horne, of Horne & Rhodes, Tallahassee, Fla., James W. Middleton, Fort Walton Beach, Fla., for appellee.
 Before RIVES, JONES and GEWIN, Circuit Judges.
 GEWIN, Circuit Judge.
 
 
 1
 This case involves a suit by Claud B. Morgan, Plaintiff-Appellee, against eight insurance companies, Defendants-Appellants, to recover on fire insurance policies issued to him by the several insurance companies. The insurance companies defended the suit on the ground that Morgan, in his written proof of loss, fraudulently overstated the value of his inventory in his Valparaiso variety store. The case was submitted to the jury on two special interrogatories pursuant to Rule 49(a) Federal Rules of Civil Procedure. The jury found for Morgan and fixed the value of his inventory at $35,400.00, which together with the stipulated losses, made the total award to Morgan, $75,842.22. The several insurance companies have appealed from this judgment on the ground that the special verdict is internally inconsistent and that Morgan was guilty of fraud as a matter of law in filing his proof of loss.
 
 
 2
 This suit involves business property and merchandise insured by Badger Mutual Insurance Company and the seven other insurers (hereinafter referred to collectively as The Companies) allegedly destroyed in a fire. The controversy revolves around a provision in the policies with regard to sworn proofs of loss. This provision is as follows:
 
 
 3
 "This entire policy shall be void if, whether before or after loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."
 
 
 4
 Morgan submitted sworn proofs of loss after the fire, in an amount slightly in excess of $95,000.00, for merchandise alleged to have been destroyed in his Valparaiso Variety Store. Certain other losses including furniture and fixtures were stipulated by the parties; Morgan's $95,000.00 plus figure being the one in dispute. This figure did not include any items of inventory so completely destroyed that they could not be traced or identified with certainty. The actual physical count of readily identifiable goods was the basis of Morgan's claim.
 
 
 5
 This is the second trial of this case. At the first trial, the issue of fraud in the proofs of loss was submitted to the jury, which brought in a verdict for Morgan but fixed the value of the inventory at $33,000.00. District Judge Carswell, who heard the case, granted the companies' motion for a new trial, Morgan v. Badger Mutual Insurance Company, 181 F.Supp. 496 (D.C.N.D.Fla.1960), pointing out that the first verdict was $62,000.00 less than the proof of loss sworn to by applicant. As stated by the Court in granting the new trial, "* * it is difficult, if not impossible, to say the jury took into consideration the aspect of false swearing so as to preclude plaintiff from recovering anything." The Court felt that error was committed in its jury instructions, although there was no objection by counsel for either party. At the first trial, special issues were not submitted to the jury, and a general verdict was rendered.
 
 
 6
 The second trial, out of which this appeal arises, presented substantially the same issues and proof as the first one. The following two special interrogatories were submitted to the jury for answer:
 
 
 7
 "Special Interrogatory No. 1
 
 
 8
 "Was there wilful concealment or misrepresentation of any material fact or circumstance by the Plaintiff to the Defendants concerning the quantity or value of the variety store inventory destroyed in the fire?"
 
 
 9
 "Special Interrogatory No. 2
 
 
 10
 "What was the actual cash value of the merchandise in the variety store at the time of the fire?" The jury answered the first question, "No", but assessed the value of the inventory at a figure close to that arrived at by the first jury, $35,400.00.
 
 
 11
 The companies moved for a directed verdict which was denied; and later filed motions seeking a judgment N.O.V. or in the alternative, a new trial. In addition, the companies moved for judgment in their favor under F.R.Civ.P. 56, which was denied; and finally sought entry of judgment in their favor under F.R.Civ.P. 58 based on the answers of the jury to the special interrogatories. All motions were denied. On this appeal, the companies assert that they do not desire a new trial, but seek a final decision in their favor in order to avoid needless litigation.
 
 
 12
 The contract terms are plain to the effect that a forfeiture results when the insured falsely and fraudulently misrepresents the amount of his loss. This is true even though there is no showing of any prejudicial detriment suffered by the insurer. Chaachou v. American Central Ins. Co., 5 Cir., 1957, 241 F.2d 889, and cases cited in footnote 6 of that opinion. The rule is obviously harsh, but the Courts will protect valuable contract rights by placing the heavy burden on the insurer of establishing that the conduct complained of was wilful and purposeful, and was substantially material in the circumstances. Claflin v. Franklin Ins. Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884). The conduct must be designed to cheat and deceive. Mistakes in calculation, exaggeration in the amount of the claim, or doubtful assertions which arise from the good faith judgment of the insured will not invalidate the policy. Chaachou v. American Central Ins. Co., supra.
 
 
 13
 The companies contend that since the jury found that the value of the inventory was only $35,400.00 while Morgan had sworn that it was in excess of $95,000.00, this constituted an actual finding of fraud on the part of Morgan, irrespective of the specific finding against such fraud in its special verdict. The companies argue that the negative finding as to fraud is a general finding which must give way to the more specific finding as to the value of the inventory; that the two findings are inconsistent; and when taken together, cannot support the verdict reached. To bolster this contention, the companies insist that this is not a case in which only the value of the inventory is in dispute, but rather whether an actual count of inventory items was in fact ever made. They urge that the jury must have found that Morgan did not actually count a great many items as claimed by him under oath; and that the verdict is tantamount to a finding of fraud.
 
 
 14
 It is necessary to determine exactly upon what issue or issues the case was submitted to the jury. A portion of the court's charge is as follows:
 
 
 15
 "The position of the plaintiff is in substance and is a matter which the jury must resolve in weighing all this testimony, it comes down pretty closely to a determination of your view of the facts of the inventory, the plaintiff's contention as to whether he took an actual physical inventory as to each of those items and find from such inventory a value of substantially around $95,000. That is the central issue upon which the parties here have joined and locked horns so-to-speak and upon which this jury is called to give its answer. If you find that there was a material variance from the $95,000 figure, or if you found that the plaintiff did not in fact, or could not in fact, have made an inventory, an actual physical count piece by piece inventory as he testified, then your verdict, your answer to Interrogatory No. 1 must be, if you find that he did so say, knowingly, that he was doing so with the idea that the insurance company would pay on such basis, then your answer to Interrogatory No. 1 must be in the affirmative."
 
 
 16
 Both the question of whether Morgan did in fact make such an inventory, and the question of the value claimed were presented to the jury. The court correctly charged the jury that even though they found a material variance as to the $95,000.00 claimed in the proof of loss, it must also find that Morgan willfully misrepresented the facts if recovery was to be barred by the defense of fraud. A material variance in the amount claimed in the proof of loss and the amount found by the jury, standing alone, would not conclusively prove a willful misrepresentation amounting to fraud as a matter of law. Since the jury by its answers did not necessarily find or intimate that the $35,400.00 figure was reached because Morgan did not actually count many items of inventory as claimed, it is reasonable to assume that the jury believed the value of the inventory was substantially less than the figure claimed in the proof of loss. Apparently, the jury did not accept the contention of the companies, strongly urged during the trial and on this appeal, that Morgan was guilty of willful misrepresentation and fraud; but the jury did disagree with Morgan as to the value claimed.
 
 
 17
 We do not agree with the contention of the companies that the findings of the jury are so clearly inconsistent that we as a reviewing court must strike down such findings. The evidence in this case is not such that it admits of no other interpretation or conclusion than that there was a conscious, willful and fraudulent misrepresentation by the appellee, Morgan. See Metropolitan Life Ins. Co. v. Fugate, 5 Cir., 1963, 313 F.2d 788. Judges often disagree with juries, but disagreement with conclusions reached by the trier of facts is not a valid reason for setting aside such conclusions. This case has been tried by two separate juries and the same results ensued; the first time by general verdict, and the second on special issues. The distinguished trial Judge disagreed with the general verdict (the first) to the point of granting a new trial. The same trial Judge has refused to set aside the second special issue verdict, and we agree with his conclusion.
 
 
 18
 In Soler & Company, Inc. v. United Firemen's Insurance Co. of Philadelphia, 299 U.S. 45, 57 S.Ct. 54, 81 L.Ed. 30 (1936), the insured submitted a proof of loss of $35,000.00 and sued for the full amount. The jury returned a verdict in favor of the insured and set the value at $17,000.00. The insurer claimed that the verdict fixing the value of the property at less than one-half of the amount claimed in the proof of loss established a fraudulent overvaluation in the proof of loss as a matter of law. The Supreme Court rejected this contention saying:
 
 
 19
 "We cannot accept the view that a conclusive presumption of fraud arose because the verdict was far less than the amount stated in the proof of loss. If the bill of exceptions be disregarded we must assume the jury was properly instructed — were told that condition 12 required a verdict for the insurer `if the claim be in any respect fraudulent.' The finding for the assured indicates that they discovered no fraud. Policy holders may present inaccurate proofs of loss without conscious dishonesty or intent to defraud; different views of values are common; memory is faulty; insurance company and assured often entertain widely different views concerning the policy; and evidence cannot always be produced to establish something declared to be true in entire good faith."
 
 
 20
 The Court went one step further and stated that the fact there was absolutely no proof whatever of an item claimed by the insured in his proof of loss, did not establish fraud as a matter of law.
 
 
 21
 In American Home Fire Assur. Co. v. Juneau Store Co., 7 Cir., 1937, 78 F.2d 1001, the insured submitted a proof of loss totaling $73,000.00. The jury returned a verdict in his favor for only $33,000.00. The court reversed the judgment, because the accuracy of the actual inventory and invoices from a wholesale warehouse were in issue. The court indicated, however, that it might have viewed the case differently if the actual dispute had related solely to value of the inventory:
 
 
 22
 "The principles of law applicable are not doubtful nor difficult of statement. Our trouble has arisen over the application of the rule to the facts of this case. We would have no difficulty in accepting the views expressed in Wiesman v. American Insurance Company, 184 Wis. 523, 199 N.W.55, 200 N.W.304, if the record before us showed any possible basis for the discrepancy in values through difference of opinion as to value."
 
 
 23
 We have carefully examined the record to determine whether there is any evidence which would support the jury's verdict of $35,400.00 as the value of the inventory, without finding willful concealment or misrepresentation on the part of Morgan. An estimate of the value of burned non-salvagable merchandise, considering depreciation and other factors, is a basis for a substantial difference of opinion, even among experts. This fact is strikingly illustrated by the testimony in this case. The companies' witness, Harvey Cotton, estimated the value of the merchandise to be between $27,500.00 and $33,000.00, but testified that his estimate could be from 10% to 40% off. The companies' witness, John Sewell, estimated the value at $30,000.00. Witness for the companies, W. H. Thompson, estimated the value between $25,000.00 and $30,000.00; and another of their witnesses, William Cooper, estimated the value at approximately $27,500.00, while stating that in this field wide differences of value could be expected and that his estimate could be 10% off. Arnold Block, witness for appellee, a general supplier of dry goods for forty years, estimated the value of the merchandise in the store at $100,000.00 when he visited the store a short time before the fire.[1]
 
 
 24
 The plaintiff, Morgan, testified that he filed the proof of loss based on actual cash value of $95,083.93 without calculating any deduction for obsolescence or shopworn items. The jury was charged however, to consider such items as obsolescence and shopworn items in their answer. We quote pertinent portions of the Court's charge in the margin.[2]
 
 
 25
 There was also some evidence to the effect that another store of Morgan's had been closed shortly before the fire and the goods moved into the store in question. A warehouse had been closed shortly before the fire and the merchandise there moved to the Valparaiso store. The season of the year when the fire occurred was shortly before Christmas and the jury could have inferred an acceleration of shop wear. The specific answer to Interrogatory No. 1 absolved Morgan of fraud. The jury in this case had before it divergent estimates and opinions as to the value of the merchandise; witnessed the demeanor of each witness; and made findings accordingly. Such findings when supported by sufficient evidence or inferences from such evidence should not be disturbed. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944); Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947).
 
 The judgment is
 Affirmed
 
 
 Notes:
 
 
 [1]
 In his opinion granting a new trial, the trial court asserted that the companies' lowest estimate at the first trial was $12,000.00. There was considerable variation in the values proved by the companies. See Badger, supra
 
 
 [2]
 "In the event you do determine that the Defendants have failed to carry the burden of proof and establish that there was wilful misrepresentation, if you fail to find that they did not and you answer Interrogatory No. 1 in the negative, then the second Interrogatory of the second question, then you would turn to that question and answer it, and the question is, of course, the actual cash value of the inventory at the time of this fire. Now, actual cash value, Members of the Jury, is the same thing to say as the market value of the property, which can be defined as the value of an article offered for cash by a seller who is willing to sell, but not being forced to to a buyer who is willing to buy but is not being forced to buy at that time. When we speak of actual cash value here we are referring to at all times to the wholesale market value, or wholesale actual cash value, as distinguished from retail, because all the evidence is in accord and there is no dispute among the parties as to that distinction we have here. You may, in connection with any actual cash value in consideration of issue No. 2, if you reach that, the unseasonableness of goods or any portion thereof, the obsolescence or the shopworn character, if any, and of every nature and characteristic of the possible quality which might have been put into the test."