Elaine **BOYAR**, Plaintiff-Appellant,

v.

The **TRAVELERS INSURANCE COMPANY**, Defendant-Appellee.

No. 24, Docket 30295.

United States Court of Appeals
Second Circuit.

Argued Sept. 27, 1966.

Decided Nov. 2, 1966.

Bernard A. Helfat, Helfat & Helfat, New York City (J. Nathan Helfat, New York City, of counsel), for plaintiff-appellant.

Don F. Salkaln, Terhune, Gibbons & Mulvehill, New York City, for defendant-appellee.

Before MOORE, FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

This action by the widow of Herman Boyar to recover as beneficiary of a $25,-000 life insurance policy issued by The Travelers Insurance Company was begun in the Supreme Court of New York for New York County and removed to the District Court for the Southern District of New York because of diverse citizenship. After trial before Judge McLean and a jury, the widow recovered judgment only for $2,437.71, representing the premiums Boyar had paid plus interest.

The facts are somewhat unusual. In 1952, when 43 years old, Boyar took out a policy with the Travelers which also named Mrs. Boyar as sole beneficiary and provided not only for death benefits of $25,000 but also for retirement benefits from age 65; this required annual premiums of $1,795.75. On March 30, 1959, he discussed with Nathan Ratkin, the Travelers' agent who had sold him the 1952 policy, the possibility of exchanging it for one not including retirement benefits and carrying consequently lower premiums. Ratkin later advised Boyar that Travelers would either rewrite the 1952 policy or issue a new ordinary life policy, at about half the former premiums. The differences between the two courses were stated to be that taking out a new policy would provide a refund of the entire cash value of $9800 on the 1952 policy whereas rewriting that policy would produce a refund of only $6569.75 with the balance remaining as an equity, and that if Boyar elected to take out a new policy, Travelers would pay for his physical examination whereas a rewriting of the old one would require Boyar's paying $10 for this. There was no mention of the fact that the new policy would be contestable for two years whereas the old one no longer was.

Boyar chose to take out a new policy and, after his examination by the Travelers' physician, this was delivered about July 2 or 3. The application stated the new policy was to replace the 1952 policy, and this was returned. A few days later Boyar paid the first premium on the new policy and Travelers paid him the $9800 cash surrender value of the old one. After having duly paid further premiums of $1799 on the 1959 policy, Boyar died of heart disease on February 25, 1961.

Travelers declined to pay the death benefit to Mrs. Boyar on the ground that her husband had given false answers to questions in the application as to examination or attendance by doctors within the last five years, the taking of electrocardiograms or blood studies, prior treatment for heart disease, and knowledge of physical impairments or disorders. When sued, it answered that for these reasons the policy was void and offered to refund the premiums paid.[1]

Travelers presented substantial evidence that Boyar made misrepresentations in his application for the 1959 policy and that these were material in the sense that it would not have issued the policy had it known the truth. Mrs. Boyar asserted, however, that if these issues were found against her, Travelers could "rescind" the 1959 policy only by tendering back the whole consideration it received, and that this consisted not only of the premiums on that policy but also of the 1952 policy less the cash surrender value and the premiums that would have been payable thereunder. The judge ruled against this contention and instructed the jury generally, over plaintiff's exception, that the facts concerning the 1952 policy "do not affect the issues that you are called upon to decide in this case and that you are to pay no further attention to them." The jury rendered a verdict only for a refund of the $1799 of premiums on the 1959 policy, with interest, and judgment was entered accordingly.

---

1. The answer also asserted that at the time of payment of the first premium and delivery of the policy, Boyar was not in good health—this being stated in the policy as a condition on its becoming effective. However, this point was not included in the statement of issues in the pretrial order or submitted to the jury.

At first sight this seems a rather unjust result. It is fairly apparent, as defendant's counsel conceded at the argument, that if Boyar had told the truth and Travelers had refused to issue the new policy, he would have stayed with the old one. Hence the only damage Travelers suffered from the misrepresentations was liability under the new policy rather than the old, and this, it might seem, can be compensated by requiring a refund of the cash surrender value and payment of the excess of the premiums under the old policy over those under the new, in both cases with interest, as a condition to recovery of the death benefit. Legal theories to support such a result can readily be found. Since Travelers was already committed to insure Boyar's life for $25,000, the misrepresentation can be said to have been material only to the decision to do this under an ordinary life policy; hence equity allegedly is done by restoring the *status quo ante*. It could also be said that if Travelers is entitled to rescind the 1959 policy because of Boyar's misrepresentation, Mrs. Boyar is entitled to rescind the surrender of the 1952 policy which Boyar made on the mistaken assumption that he was getting a valid new policy. Such seems to have been the theory of the court in a case, not cited by the parties, which is similar to Boyar's in some respects, Life & Casualty Ins. Co. of Tennessee v. Gresham, 127 Fla. 234, 168 So. 812 (1936), see 3 Appleman, Insurance Law and Practice § 1835 (1941). We believe this would be the proper result if Boyar acted in good faith and his omissions and misstatements were the consequences of carelessness or forgetfulness.

The case would stand differently, however, if Boyar deliberately led Travelers into issuing for ordinary premiums a policy to which he knew or should have known he was not entitled.[2] The record by no means precludes an inference that

Boyar's desire to be rid of the policy with the retirement annuity might have been due to a realization that he had small chance of enjoying these benefits, which were to begin only in 1974. Although most of the misrepresentations related to events some time in the past, one concerned a visit to a specialist for a checkup and the taking of an electrocardiogram (which, however, showed merely an old infarction and did not alarm the physician) on March 23, 1959, only a week before Boyar informed Ratkin of his desire to change to an ordinary life policy. The premiums on the old retirement-life policy must have reflected the hedge that while early death would produce a loss to the insurer on the death benefit it would afford a profit on the annuity, whereas long life would do the reverse. Actuarial calculations are defeated if an insured can change his position by deceiving the insurer after he learns the odds have shifted in his case. A court should not encourage fraud by adopting a rule of law by which if the policy became incontestable or the misrepresentations were not discovered or could not be proved, the insured would reap the rewards of his deceit whereas in the contrary cases he would be no worse off than before—heads I win, tails I can't lose.

We think therefore that in addition to deciding whether Boyar made misrepresentations and whether Travelers would have declined to issue the new policy had it known the truth, the jury should have been asked to determine whether Boyar deliberately lied, believing or having reason to believe that the truth would prevent his obtaining insurance which a man with his record could not obtain at ordinary premiums. If it should so find, a refund of the premiums on the new policy, with interest, is all Mrs. Boyar ought in equity to receive; if it finds otherwise she would be entitled to $25,000 less the $9800 cash surrender value

---

2. This problem did not exist in the Florida case just cited since there the beneficiary *told* the agent he did not want to exchange the previous policy on his child's

life unless the new policy would be equally invulnerable to attack despite the child's fully disclosed existing illness.

of the old policy and the excess of premiums under the old policy over those under the new—all with appropriate interest. While it would be possible to limit a further trial to the additional point requiring resolution, we think the issues are so interrelated that a complete new trial would better serve the interests of justice. 28 U.S.C. § 2106.

The judgment is reversed and the cause remanded for a new trial consistent with this opinion. Costs on this appeal to abide the ultimate event.