Giuseppe **LOMARTIRA**, a.k.a., et al., Plaintiffs-Appellants,

v.

**AMERICAN AUTOMOBILE INSURANCE COMPANY,** Defendant-Appellee.

Giuseppe **LOMARTIRA**, a.k.a., et al., Plaintiffs-Appellants,

v.

**QUEEN INSURANCE COMPANY OF AMERICA,** Defendant-Appellee.

Nos. 249, 250, Dockets 30245, 30246.

United States Court of Appeals Second Circuit.

Argued Dec. 8, 1966.

Decided Jan. 16, 1967.

Frank J. Raccio, New Haven, Conn. (W. Paul Flynn and Howard Zoarski, New Haven, Conn., on the brief), for plaintiffs-appellants.

Thomas F. Parker, Hartford, Conn. (Willis G. Parsons, Jr., Gross, Hyde & Williams, Hartford, Conn., on the brief), for defendant-appellees.

Before LUMBARD, Chief Judge, and HAYS and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

The plaintiffs in these two consolidated diversity actions, Giuseppe Lomartira,

Sr., and Rose Lomartira,[1] have appealed from a decision of Judge Timbers, sitting without a jury in the District of Connecticut, that the three fire insurance policies sued on were voided by the trial testimony of plaintiff Giuseppe Lomartira, Sr., regarding alleged improvements, found by Judge Timbers to be knowingly false and fraudulent, because each of the policies contained a provision prescribed by the Connecticut standard form of fire insurance policy, Conn. Gen. Stat. § 38-98 (1958):

> "Concealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

We affirm Judge Timbers' decision.

Although the total face amount of the policies was $25,000, the Lomartiras had bought the insured two-story frame dwelling in Branford, together with the lot it stood on and another tract, for $9,000 about two years before its total destruction by two fires on May 26 and 30, 1957.[2] The value of the dwelling before the fires was thus one of the two chief issues in the ten-day trial before Judge Timbers.[3] The other was whether the plaintiffs' conceded failure to file sworn proofs of loss was waived (or the defendants estopped to raise it as a defense), either by an alleged general custom in the area of not requiring such proofs, or by the actions of defendants' representative, the General Adjustment Bureau, in investigating the loss, suggesting a settlement, and allegedly assuring the Lomartiras that it would "take care of everything."

---

1. Giuseppe Lomartira died pending this appeal, and his executrix has been substituted as an appellant.

2. The Lomartiras obtained a half interest in March 1955 for $4,500, and the remaining half in March 1956 for the same sum.

3. Plaintiffs claimed that they were entitled under the policies to the replacement value of the dwelling, but were met by the defense, among others, that they had not rebuilt it, as the policies allegedly required.

Plaintiff Giuseppe Lomartira, Sr., testified that after acquiring the insured dwelling he plastered its stone cellar and did "concrete work on the two porches." He also testified that he paid one Russo, doing business as the Russo Roofing Company, "a little over" $8,000 in cash to rewire the building, to paint its interior, and to install new storm windows, new gutters, a new bathroom, and new doors and hardwood floors. Russo, he said, had died "about a year or two ago." On cross-examination, Lomartira testified that he had paid Russo in periodic installments over three or four months of 1955, with cash earned from selling vegetables raised on his farm.

On the seventh day of trial, defendants called one Dominick Russo, doing business as Russo Roofing Company, who testified that he knew of no other Russo in the roofing business in the Branford-New Haven area. Russo stated that he knew Lomartira, and in 1955 had received $800 for installing a new roof and front door and painting the exterior shingles on the Lomartiras' residence, down the road from the insured dwelling. He testified that he had never done any other work for the Lomartiras, and his ledger recorded no other payments from them during 1955–1957. In particular, he explicitly denied that he made any of the improvements on the insured dwelling regarding which Lomartira had testified.

At the close of Russo's testimony, the court stated:

"I think in all fairness to all persons involved, the Court should make it clear here and now, in the light of testimony by Mr. Russo and of the exhibits which have been marked and produced by him, that the Court regards this as a serious matter, and wholly aside from the issues in this case, I expect a full explanation satisfactory to the Court of what appears to be a very serious discrepancy between the testimony of the plaintiff and of his son on the one hand, and the testimony of Mr. Russo and the records produced by him.

"The Court naturally retains an open mind on this until the record is closed, but I simply want to give fair warning to all concerned that unless an explanation satisfactory to the Court is forthcoming, that I intend to take appropriate steps to determine whether there has been any violation of any law applicable to testimony under oath in this Court."

On the tenth day of trial, five days after Russo's testimony and the court's statement, plaintiff called two rebuttal witnesses, a former co-owner and a former tenant of the insured dwelling, who testified that new storm windows, doors, and floors were installed and the interior of the house painted in 1955, in addition to the work Lomartira testified he did himself. The former tenant stated that "three or four men" who came in a pickup truck did this work, but plaintiffs made no attempt to identify them, to establish that anyone was paid $8,000 for making the improvements, or, in general, to rebut Russo's testimony. Lomartira himself was not recalled.

At the close of plaintiffs' rebuttal, defendants moved to amend their answers by adding the defense of fraud and false swearing, on the ground that it had been "tried by express or implied consent of the parties." Fed.R.Civ.P. 15(b). Judge Timbers granted the motion and sustained the defense. 245 F.Supp. 124 (D.Conn.1965).

Appellants first contend that defendants' amendments should not have been allowed. The test for allowing an amendment under Rule 15(b) to conform pleadings to issues impliedly tried is whether the opposing party "would be prejudiced by the implied amendment, i. e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory." 3 Moore, Federal Practice ¶15.13 [2], at 993 (2 ed. 1966); see, e. g., Northern Oil Co., Inc. v. Socony Mobil Oil Co., Inc., 347 F.2d 81 (2 Cir. 1965). After Russo's testimony and Judge Timbers' statement,

plaintiffs were certainly apprised that the honesty, as well as the veracity, of Lomartira's testimony was at issue. At trial, no request was made for a continuance. Moreover, neither at the trial nor on appeal have appellants stated what further facts or witnesses, if any, they would have brought forward on the issue of fraud and false swearing. Under these circumstances, the amendment was properly allowed.

■ Appellants' next contention is that the trial record does not establish that Lomartira's testimony constituted "intentionally made false and fraudulent statements" and "intentionally false swearing." Davis-Scofield Co. v. Reliance Ins. Co., 109 Conn. 686, 689, 145 A. 42, 44 (1929). With due regard to Judge Timbers' opportunity to observe the demeanor of the witnesses, we cannot hold on this record that his finding was clearly erroneous. This case does not involve a mere disagreement between Lomartira and other witnesses concerning the value of the alleged improvements. See, e. g., Jose Rivera Soler & Co. v. United Firemen's Ins. Co., 299 U.S. 45, 57 S.Ct. 54, 81 L.Ed. 30 (1936); Transportation Ins. Co. v. Hamilton, 316 F.2d 294 (10 Cir. 1963). It presents, instead, a flat and unrebutted contradiction of Lomartira's specific testimony that he paid over $8,000 in cash to Russo. This contradiction fully supports the inference that Lomartira's testimony, which was clearly material, as required by Chauser v. Niagara Fire Ins. Co., 123 Conn. 413, 196 A. 137 (1937), was knowingly false.

Appellants' most substantial argument is that the fraud or false swearing which will void a policy under the standard Connecticut fire insurance policy, Conn. Gen. Stat. § 38–98 (1958), does not en-compass fraud or false swearing in the insured's testimony at trial. No Connecticut court has decided this question. The majority of courts that have ruled on the point hold that fraud or false swearing after an action is brought does not void a policy.[4] The New Hampshire court has held that it does.[5] The reasoning of the majority has been well summarized by the Third Circuit in American Paint Serv., Inc. v. Home Ins. Co., 246 F.2d 91, 94, 64 A.L.R.2d 957 (3 Cir. 1957):

> "The fraud and false swearing clause is one beneficial to the insurer and it reasonably extends to protect the insurer during the period of settlement or adjustment of the claim. When settlement fails and suit is filed, the parties no longer deal on the non-adversary level required by the fraud and false swearing clause. If the insurer denies liability and compels the insured to bring suit, the rights of the parties are fixed as of that time for it is assumed that the insurer, in good faith, then has sound reasons based upon the terms of the policy for denying the claim of the insured. To permit the insurer to await the testimony at trial to create a further ground for escape from its contractual obligation is inconsistent with the function the trial normally serves. It is at the trial that the insurer must display, not manufacture, its case. Certainly the courts do not condone perjury by an insured, and appropriate criminal action against such a perjurer is always available." ·

■ On the other hand, there are arguments in favor of the minority rule. The clear language of Conn. Gen. Stat. § 38–98 (1958) suggests no limitation to

---

4. E. g., Ins. Cos. v. Weides, 81 U.S. (14 Wall.) 375, 20 L.Ed. 894 (1872); American Paint Serv., Inc. v. Home Ins. Co., 246 F.2d 91, 64 A.L.R.2d 957 (3 Cir. 1957); cf. Vernon v. Aetna Ins. Co., 301 F.2d 86 (5 Cir.), cert. denied, 371 U.S. 819, 83 S.Ct. 33, 9 L.Ed.2d 59 (1962).

5. Follett v. Standard Fire Ins. Co., 77 N.H. 457, 92 A. 956 (1915). Several courts have forfeited policies on the basis of false swearing both before and at trial, without explicitly deciding this issue. E. g., Cuetara Hermanos v. Royal Exch. Assur. Co., 23 F.2d 270 (1 Cir. 1927), cert. denied, 277 U.S. 590, 48 S.Ct. 437, 72 L.Ed. 1002 (1928).

fraud and false swearing before an action is brought, and the Connecticut Supreme Court of Errors has often stated that "if the terms of the policy are clear, they must be given their natural and ordinary meaning." E. g., Plunkett v. Nationwide Mut. Ins. Co., 150 Conn. 203, 207, 187 A.2d 754, 756 (1963). An action on a policy is an adversary proceeding, as the Third Circuit emphasizes, but this does not mean that there is not the strongest of policies against fraudulent testimony. The threat of criminal prosecution for perjury may well be too remote to serve as a meaningful deterrent to such testimony. If so, the majority rule in effect presents a dishonest insured a chance to gain, with minimal risk of loss, by fraudulent testimony, a result seemingly inconsistent with the strong policy against fraud embodied in Conn. Gen. Stat. § 38–98 (1958). Compare Boyar v. Travelers Ins. Co., 368 F.2d 784 (2 Cir. 1966). Many cases, moreover, are settled after pretrial discovery, during trial, or pending appeal or a new trial; false swearing after the commencement of an action would clearly influence such settlements. Finally, the Third Circuit's apparent concern that the minority rule would encourage insurers to litigate meritorious claims in the hope of eliciting fraudulent testimony is difficult to share, especially in view of the paucity of reported cases involving false swearing at trial. Therefore, the question of which is the preferable rule is a close one, upon which we need not and do not express a view.

 In a case like this one, where a question of state law must be determined in a diversity case, great weight should be given the determination of a district judge sitting in that state. A court of appeals should not reverse the considered judgment of the district court on the law of its state unless it believes it to be clearly wrong.[6] E. g., Bernhardt v. Polygraphic Co., 350 U.S. 198, 204–205, 76 S.Ct. 273, 100 L.Ed. 199 (1956); People of State of California v. United States, 235 F.2d 647, 653–654 (9 Cir. 1956); Mitton v. Granite State Fire Ins. Co., 196 F.2d 988, 992 (10 Cir. 1952). The inconclusive arguments in favor of the majority rule do not convince us that Judge Timbers was clearly wrong in holding that the Connecticut courts in interpreting the Connecticut statute would hold that fraud or false swearing at trial voids a policy. We therefore affirm his holding.

---

6. Not infrequently, no member of the panel of a court of appeals is a member of the bar of the state whose law is in question. That is the case here.